# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

ROBERT ESTORGA,

    Plaintiff,

v.

SANTA CLARA VALLEY TRANSPORTATION AUTHORITY,

    Defendant.

Case No. 16-cv-02668-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION**

Plaintiff Robert Estorga ("Estorga") alleges that Defendant Santa Clara Valley Transportation Authority ("VTA") fails to compensate bus drivers at an overtime rate when they accrue travel time by working in excess of 40 hours in a week. Mot. 1, ECF 34-1. VTA claims that this suit is merely a collateral attack on the judgment entered in a separate suit, *Rai v. Santa Clara Valley Transportation Authority*, Case No. 12-cv-04344-PSG ("*Rai*"). Opp'n 1, ECF 36. At this juncture, Estorga seeks conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"). For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Estorga's motion for conditional certification.

## I. BACKGROUND

Prior to his retirement effective June 1, 2015, Estorga was a VTA bus driver. Estorga Decl. ¶ 3, ECF 34-5. Estorga asserts that during his employment with VTA, VTA failed to pay him and other bus drivers for two types of travel time. First Am. Compl. ¶ 8 ("FAC"), ECF 27. One is the "start-end" travel time, in which Estorga claims that a bus driver would begin a shift at the "division," but would end the shift on the street, a geographical location distant from the "division." FAC ¶ 10; Russell Decl. ¶ 8. The second is unpaid travel time incurred by "mid-shift" travel, in which Estorga alleges he was required to travel from the end of his first bus run in Gilroy

to the beginning of a second bus run starting in San Jose, for example. FAC ¶ 9; Mot. 3; Russell Decl. ¶ 16. Estorga claims VTA's policies violate FLSA overtime requirements for "hours worked."

An overview of the *Rai* suit is also recounted here as the *Rai* suit will be relevant to the Court's evaluation of Estorga's motion. In 2012, Beljinder Rai and other class representatives filed a class action and collective action complaint in this District asserting violation of FLSA and state labor laws due to VTA's failure to compensate bus drivers for two forms of travel time. Ex. B to McLaughlin Decl. (*Rai* Dkt.), ECF 36-1. Rai claimed that "Start-End Travel Time," Ex. A to McLaughlin Decl. ¶¶ 10, 12 ("*Rai* Fourth Am. Coml."); Ex. C to McLaughlin Decl. ¶ 6.3.7 ("*Rai* Settlement"), and "Split-Shift Travel Time" required time and one-half overtime pay. *Id.* ¶ 6.3.8; *Rai* Fourth Am. Coml. ¶¶ 13, 15. The parties in the *Rai* suit proceeded through conditional certification of the collective action, motion for class certification and fact and expert discovery. *E.g.*, *Rai* Dkt. Following numerous settlement conferences overseen by Magistrate Judge Spero, the parties came to an agreement in which VTA agreed to pay $4.2 million and to take certain steps to ensure compliance with applicable wage-and-hour laws. *Rai* Settlement. Amalgamated Transit Union, Local 265 ("ATU") representing all bus and light rail operators at VTA but not a party to *Rai*, objected to the settlement. Opp'n 36. On May 17, 2016, the Court found ATU's objections and other objections to be untimely and without merit, and approved the final class action settlement. Ex. J to McLaughlin Decl. (Final Approval Hr'g Tr.) 6:17-14; 23:8-11; Exs. E and F to McLaughlin Decl. Plaintiff Estorga opted out of the settlement class, along with sixteen other members including Kenneth Dura, Wayne Metrick, Kevin Golden, Paul Cooper, Juanito Alberto, Emile Betti, Kenneth Norrington, J.L. Pitts, Fred Hernandez, David Howard, Chao Yong Li, Richard Lewis, Richard Chavarria, Clifton Sledge, John Marini, and Harold Sheehy. Ex. E to McLaughlin Decl. ¶¶ 8, 13 ("Final Approval"). Apparently, none of these individuals opted-in to the FLSA collective action, either. On May 17, 2016, Estorga filed this suit. Compl., ECF 1.

Now before the Court is Estorga's motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). ECF 34-1.

## II. LEGAL STANDARD

The Fair Labor Standards Act ("FLSA") provides that actions against employers for violation of overtime and minimum wage requirements may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

A suit brought on behalf of other employees is known as a "collective action," a type of suit that is "fundamentally different" from class actions. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (citation omitted). Unlike class actions certified under Rule 23, potential members of an FLSA collective action must "opt-in" to the suit by filing a written consent with the Court in order to benefit from and be bound by a judgment. 29 U.S.C. §216(b); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Employees who do not opt-in may bring a subsequent private action. *Leuthold*, 224 F.R.D. at 466 (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990)). Once an FLSA "action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (discussing collective action in context of Age Discrimination in Employment Act).

The determination of whether a collective action is appropriate is within the Court's discretion. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007). The named plaintiff bears the burden to show that they and the proposed class members are "similarly situated." *See id.* (citing 29 U.S.C. § 216(b)). The FLSA does not define "similarly situated." District courts in this Circuit generally apply a two-step inquiry in an FLSA action. *See, e.g.*, *Leuthold,* 224 F.R.D. at 466–67; *Adams*, 242 F.R.D. at 536. The two-step approach distinguishes between conditional certification of the action and final certification. Under the first step, the court makes an initial "notice-stage" determination of whether potential opt-in plaintiffs are similarly situated to the representative plaintiff, determining whether a collective action should be certified for the sole purpose of sending notice of the action to potential class members. *Leuthold*, 224 F.R.D. at 466-67; *Adams*, 242 F.R.D. at 536. The sole consequence of conditional

3

certification is the "sending of court-approved written notice," to the purported members of the class. *Genesis*, 133 S. Ct. at 1530. Those individuals become parties to a collective action only by filing written consent with the court.

For conditional certification at this notice-stage, courts require little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan" and a showing that plaintiffs are "generally comparable to those they seek to represent." *Villa v. United Site Servs. of Cal.*, No. 12-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *Stanfield v. First NLC Fin. Serv., LLC*, No. 06-3892-SBA, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006); *see also Morton v. Valley Farm Transp., Inc.*, No. 06-2933-SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct (internal quotation marks and citation omitted)). Thus, a named plaintiff must show that he or she is similarly situated to the absent members of the collective action and present "some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Russell v. Wells Fargo & Co.*, No. 07-3993-CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008); *Sanchez v. Sephora USA, Inc.*, No. 11-3396-SBA, 2012 WL 2945753, at *2 (N.D. Cal. July 18, 2012) ("Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members." (citations and quotation marks omitted)).[1]

The standard for conditional certification is a lenient one that typically results in certification. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627-28 (E.D. Cal. 2009)

---

[1] The "similarly situated" requirement is "considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions predominate." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. 1991) (citation omitted); *Villa*, 2012 WL 5503550 at * 14 ("[A] collective action does not require a showing that common claims predominate.").

4

(citing *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)). As a practical matter, "[a]t this stage of the analysis, courts usually rely only on the pleadings and any affidavits that have been submitted." *Leuthold*, 224 F.R.D. at 468. Plaintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery. *Kress*, 263 F.R.D. at 630. However, "[u]nsupported allegations of FLSA violations are not sufficient to meet the plaintiffs' burden." *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015) (citation omitted).

Courts have emphasized that a lenient standard is used at the notice-stage step because a court does not have much evidence at that point in the proceedings—just the pleadings and any declarations submitted. In contrast, at the second step, a stricter standard is applied because there is much more information available, "which makes a factual determination possible." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009); *see also Labrie v. UPS Supply Chain Sols., Inc.*, No. 08-3182-PJH, 2009 WL 723599, at *4 (N.D. Cal. Mar. 18, 2009) (noting that the first step "is characterized by a fairly lenient standard, necessitated by the fact that not all discovery will have been completed at the time of the motion," while, at the second step, "the court engages in a more stringent inquiry into the propriety and scope of the collective action" because "discovery is complete and the case is ready to be tried").

In considering whether the lenient notice-stage standard has been met in a given case, courts bear in mind the following:

(1) A plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing that class members exist who are similarly situated to him. A handful of declarations may suffice. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08-0385-SC, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (finding standard met based on declarations from plaintiff and four other individuals); *Escobar v. Whiteside Constr. Corp.*, No. 08-01120-WHA, 2008 WL 3915715, at *3-4 (N.D. Cal. Aug 21, 2008) (finding standard met based on declarations from three plaintiffs); *Leuthold,* 224 F.R.D. at 468-69 (finding standard met based on affidavits from three proposed lead plaintiffs).

(2) The "fact that a defendant submits competing declarations will not as a general rule

preclude conditional certification." *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (citation omitted). As Judge Alsup of this District has noted, competing declarations simply create a "he–said–she–said situation"; while "[i]t may be true that the [defendant's] evidence will later negate [Plaintiffs'] claims, that should not bar conditional certification at the first stage." *Escobar*, 2008 WL 3915715, at *4.

At the second step of the two-step inquiry, "the party opposing the certification may move to decertify the class once discovery is complete." *Adams*, 242 F.R.D. at 536 (citation omitted); *Escobar*, 2008 WL 3915715, at *3 ("Certification is called 'conditional' during the first stage because the opposing party could always (successfully) move for decertification."). "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 WL 3190527, at *2. At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467. It is at the second stage that the Court makes a factual determination about whether the plaintiffs are actually similarly situated by weighing various factors, such as: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* Even at this second stage, the standard courts apply is different, and easier to satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure 23(b)(3). *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).

### III. DISCUSSION

Estorga seeks conditional certification of a collective action to pursue claims not covered by the *Rai* action. Mot. 9. Estorga argues that *Rai* covered only travel time violations from August 17, 2009 to January 26, 2016 so this collection action would consist of members who have claims that have accrued after that time period. *Id.* at 9 n.17. Estorga further contends that this collective action also includes members who did not "opt-in" to *Rai*. Reply 1, ECF 37. The class Estorga proposes for the collective action consists of:

> All persons who are or have been employed by the Defendant, Santa Clara County Transportation Authority and perform or performed services as a bus operator 1) who did not opt into the decision of Rai

> v. Santa Clara Valley Transportation Authority (N.D. Cal. 2016)
> Case No. 5:12-cv-04344-PSG ("*Rai*") and is or has been a bus
> operator for VTA within the period of the statute of limitations and
> 2) who opted into *Rai* and performed services as a bus operator on
> or after January 27, 2016.

Proposed Order ¶ 2, ECF 34-2. Estorga seeks an order (1) conditionally certifying the proposed class, (2) requiring VTA to produce a class list to Estorga's counsel within 10 days from the date of the order, (3) approving the attached notice and consent form to join the action; and (4) directing the dissemination of the notice within 28 days of the receipt of the class list from VTA. *Id.*

To support the allegation that VTA failed to pay bus drivers for the two types of travel time discussed above, Estorga provides his own declaration as well as that of Terry Russell, the ATU President. Estorga Decl.; Russell Decl., ECF 34-6. Russell explains that VTA bus drivers often incur unpaid "start-end" and "mid-shift" travel time. *Id.* ¶¶ 8, 16. Along with the Russell declaration, Estorga submits various charts named "Synopsis of Runs," listing all the routes a transit division operates during a given quarter, to show how certain bus "runs" exceed an 8-hour day. Mot. 2-3; Exs. B-J to Russell Decl.; Russell Decl. ¶ 9-13. According to Russell, although various routes would require travel time between runs, the charts do not reflect that additional pay was made to compensate for those travel times. *Id.* ¶ 16.

VTA offers several arguments in opposition. VTA first contends that there are no means to determine class-wide liability due to significant variation in how bus operators perform their travel or whether they perform the alleged travel. Opp'n 6. Additionally, VTA asserts that there is no evidence that any other member of the putative collective action is interested in pursuing these claims. *Id.* at 7.

The Court is satisfied that Estorga has made substantial allegations that are supported by declarations and exhibits. For example, Estorga and Mr. Russell explain that certain bus runs would require the operator to incur "mid-shift" and "start-end" travel times. Russell Decl. ¶¶ 8, 16; Estorga Decl. ¶¶ 4-5. Estorga's allegations are also supported by the "Synopsis of Runs" charts. Exs. B-J to Russell Decl. Moreover, Russell further declares that "to [his] knowledge, there are currently about 933 bus drivers at VTA" and that "VTA bus drivers are interested in

pursuing claims to be paid time and one half travel time." Russell Decl. ¶¶ 7, 19. Accordingly, there is sufficient support at the conditional certification stage to establish that the putative members are similarly situated and that there is potential interest in pursuing the claims. To further delve into VTA's arguments on whether there are significant variations within the class would require an evaluation of the merits of claims, which the Court declines to do so at this stage. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007).

VTA further argues that Estorga, as a class representative, has no standing to pursue declaratory relief because he is no longer a VTA employee. Opp'n 7-8. The Court agrees that Estorga lacks standing to seek injunctive relief because he cannot show that there is a real and immediate threat that he will suffer future wage and hour violations. *See Baas v. Dollar Tree Stores, Inc.*, No. 07-03108-JSW, 2009 WL 1765759, at *3 (N.D. Cal. June 18, 2009) (striking request for injunctive relief). Although Estorga argues that a court had previously granted conditional certification in a case where the plaintiff was a former employee, it is not apparent that the plaintiff requested injunctive relief in that case. Reply 2 (citing *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1003 (N.D. Cal. 2010)). Rather, the standing requirement must be "extant through at all stages of the review." *Genesis*, 133 S. Ct. at 1528; *id.* at 1529 ("the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied"). As such, if no current VTA bus operator opts into this collective action, the claim for injunctive relief will be stricken. However, the claim will be allowed to persist until the close of the opt-in period.

VTA also contends that the *Rai* settlement significantly narrows the proposed class. Opp'n 8. Specifically, VTA argues that "the FLSA does not create a special exception that prohibits the enforcement of settlement agreements that release FLSA claims as part of an opt out class action." *Id.* at 9 (citing *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 452 (5th Cir. 2016)). Given that the claims in this case were presented in the *Rai* case and resolved and/or released as part of the *Rai* class settlement, VTA asserts that claim preclusion applies to all persons who did not opt out of the *Rai* settlement. Opp'n 9. In addition, according to VTA, future claims are also precluded because the *Rai* settlement agreement specified that the settlement class agreed that the

8

VTA was in compliance with all applicable laws, including the FLSA. *Id.* at 10-11.

The Court finds *Richardson* persuasive that the *Rai* settlement precludes persons who did not opt out of the *Rai* settlement from maintaining this suit. In *Richardson*, the lower court in the Southern District of Texas approved a collective action that excluded members of a previously settled opt-out class action in California state court. 839 F.3d at 444-45. The excluded plaintiffs argued that the settlement from the California action should have no preclusive effect on their FLSA claims in federal district court because they did not opt into the state court action settlement. *Id.* at 451. Affirming the lower court, the appellate court rejected the plaintiffs' argument and found them to be bound by the California case's settlement terms, including the release of their FLSA claims. *Id.* Because § 216(b) and other statutory authority did not support plaintiffs' argument, the appellate court ultimately held that "FLSA did not create a special exception to the enforceability of judicially approved settlement agreements." *Id.* The district court in *Rangel v. PLS Check Cashers of Cal., Inc.* also found *Richardson* persuasive. No. 16-6119-DMG, 2016 WL 6821788, at *6 (C.D. Cal. Nov. 16, 2016). In *Rangel*, the plaintiff sought to pursue FLSA claims despite the fact that a prior class action suit had resolved identical claims through a class action settlement. *Id.* at *3. Finding the claims barred by res judicata, the court concluded that the settlement agreement released future FLSA claims even if the plaintiff did not "opt-in" to the prior action. *Id.* at *6. Agreeing with *Richardson*, the court reasoned that an opt-in is not "required to enforce a class-action settlement agreement that releases future FLSA claims" and explained that this interpretation is consistent with "Ninth Circuit's long-standing rule that a settlement agreement may bar a future, related action even where the later claim was not initially presented." *Rangel*, 2016 WL 6821788, at *6.

Here, the *Rai* settlement agreement defines "Settlement Class Member" to mean

> all current and former employees of Defendant who are or were employed by Defendant as Operators (including Bus Operators, Rail Operators, Bus Operator Trainees, Light Rail Operator Trainees, whether full-time or part-time) at any time from August 17, 2009 through the Preliminary Approval Date ("Class Period"), excepting those individuals who have previously opted out as members of the FLSA collective action and/or Rule 23 class action.

9

*Rai* Settlement ¶ 2.4. It further defines "Late Participating Claimant" to mean

> a Settlement Class Member who does not submit a Claim Form or an Opt-Out Request to the Claims Administrator, but who elects to join the Class and participate in the Settlement by endorsing (i.e., signing and cashing or depositing) the settlement check sent to him/her by the Claims Administrator.

*Id.* ¶ 2.6. In accordance with the reasoning articulated in *Richardson* and *Rangel*, all such persons included in the *Rai* settlement class are excluded from Estorga's proposed collective action class.

Although Estorga urges this Court to permit potential members of his collective action to pursue claims of alleged violation occurring after the approval date of the *Rai* settlement, the Court finds this contention unsupported by the language in the *Rai* settlement agreement. The *Rai* agreement provides that "'Released Claims' shall mean any and all wage and hour, pay-related and meal and rest break claims under California law, the Fair Labor Standards Act . . . . that accrued or accrue through the date on which an Opt-Out Request must be filed with the Court . . . , and that are subject to the provisions of Section 6.8 . . . ." *Rai* Settlement ¶ 2.10. Pursuant to section 6.8, the settlement class and VTA also stipulated:

> that following a Final Approval Hearing and entry of Judgment, the Parties, including all Settlement Class Members, shall be bound by the Judgment and barred and collaterally estopped from subsequent litigation of all issues which were or could have been raised in the Action, including all issues set forth in Section 6.3 above, as described further in Section 6.8.3 below.

*Id.* ¶ 6.8.1. Section 6.8.3 states:

> The Parties intend that this Stipulation of Settlement preclude future litigation by any Settlement Class Member over claims for unpaid wages and overtime made in connection with the conduct described in Section 6.3 above (the "Stipulations"). The Parties intend that the Stipulations resolve once and for all claims for unpaid wages and overtime made in this case and that may be made in the future based on the conduct described in these Stipulations . . . It is conclusively agreed and adjudged that, based on the conduct set forth in the Stipulations, VTA complies with all wage and hour laws, including but not limited to the FLSA, state and local laws, and that none of the Settlement Class Members will seek to impose any liability on, or obtain any relief from, VTA or any other Released Parties in the future in connection with the conduct set forth in the Stipulations.

*Id.* ¶ 6.8.3. These provisions precluding future litigation and stipulating that VTA was in compliance with all wage and hour laws, including the FLSA, are also consistent with other parts

10

of the agreement. *See also id.* ¶¶ 6.3.7, 6.3.8 (stating that VTA would instruct its bus operators or adhere to certain practices and as a result, the "Record along with this action satisfies VTA's legal obligations, and VTA is compliant with the FLSA and all state and local laws with respect to [various issues]" including "Start-End Travel Time" and "Split-Shift Travel Time").

Based on the above and contrary to Estorga's arguments, the "Released Claims" provision does not exclude future claims from the *Rai* class settlement. The "Released Claims" provision explicitly references section 6.8., which provides that the parties stipulated to VTA's compliance with applicable law given its conduct set forth in the agreement, and to the preclusion of future litigation. Moreover, other provisions in the settlement agreement read as a whole also support this interpretation. Accordingly, members of the *Rai* settlement class have released their future FLSA claims for "Start-End Travel Time" and "Split-Shift Travel Time," and thus are not eligible to be included in this conditional certification in this FLSA action.[2]

## IV. ORDER

For the foregoing reasons, the Court GRANTS IN PART Estorga's motion to conditionally certify an FLSA collective action as to persons who are or have been employed by the Santa Clara County Transportation Authority and perform or performed services as a bus operator who are not members of *Rai* settlement class. Such persons include VTA bus operators who opted out of the *Rai* settlement class, as well as bus operators who began their employment with the VTA after the opt-out request deadline in the *Rai* case.

The Court DENIES IN PART Estorga's motion to conditionally certify an FLSA collective action as to persons who were members of the *Rai* settlement class.

The Court further ORDERS the parties to meet and confer to modify the proposed notice

---

[2] At the hearing, VTA represented that 17 operators had opted out of the *Rai* settlement, and about 6 to 8 of them are eligible to participate in this action based on the allegations in the complaint. VTA also informed the Court that it is less clear whether the *Rai* settlement class includes 63 putative members of the *Rai* settlement who failed to respond to the notice in any way, *i.e.*, failed to submit a claim, failed to object, failed to exclude him or herself from the class settlement, and failed to endorse a check with the settlement amount. While the Court appreciates counsel bringing to light this information, the Court will make no determination at this stage as to the number of members that can opt-in to the collective action in this instant action.

and consent form consistent with the Court's ruling herein. An agreed-upon notice and consent form shall be submitted to the Court for approval no later than June 30, 2017. After submission of an agreed-upon notice and consent form, VTA shall produce a class list to Estorga's counsel within 10 days of that submission.

Dated: June 9, 2017

_____
BETH LABSON FREEMAN
United States District Judge