United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT ESTORGA, et al., | Case No. 16-cv-02668-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, | |
| Defendant. | |
| | [Re: ECF 93, 94] |

Robert Estorga filed this collective action on behalf of bus drivers for the Santa Clara Valley Transportation Authority ("VTA") under the Fair Labor Standards Act ("FLSA") seeking overtime pay for "hours worked" for start-end travel and split-shift travel. Under the current collective bargaining agreement, the bus drivers are paid an agreed amount for that travel time but it does not count toward overtime premium pay.

In the start-end scenario, bus drivers begin and end their shifts at different locations throughout the district; not at their home yard. In split-shift situations, a bus driver's morning shift might end at one location and hours later the bus driver may begin the next portion of the shift at a different location.

The question before the Court is whether, under the FLSA, this travel time constitutes "hours worked" mandating overtime compensation. The Court finds that while "split-shift" travel time does qualify as "hours worked," "start-end" travel time does not. Follow-up questions include whether VTA is entitled to offset any resulting liability with other overtime premium payments and whether VTA acted in good faith and did not willfully violate the FLSA. On these points, the Court GRANTS summary judgment for Defendant.

Accordingly, for the reasons discussed below, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART and Plaintiffs' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

## I. FACTS

The facts relevant to this motion, summarized below, are essentially undisputed. Both parties seek a ruling as a matter of law whether "start-end" or "split-shift" travel time under the facts of this case constitute "hours worked" under the FLSA.

### A. Parties to This Action

Defendant Santa Clara Valley Transportation Authority ("VTA") is a transit agency formed by the California Legislature in 1972 under the California Public Utilities Code. *See* Cal. Pub. Utilities Code § 100000 *et seq*. VTA operates bus and rail services throughout Santa Clara County. Russell Decl. ¶ 1, Ex. A to Flynn Decl., ECF 94-3. Some bus routes extend into Alameda County and San Mateo County. *Id.* VTA maintains four operating divisions or "yards": North Division (1235 La Avenida, Mountain View), Cerone Division (3990 Zanker Road, San Jose), and Chaboya Division (2240 South 7th Street, San Jose), which are bus divisions, and Guadalupe Division, which is the light rail division. Evans Decl. ¶ 4, ECF 93-3; Russel Decl. ¶¶ 9–11. VTA formally classifies its bus drivers as "operators." Russell Decl. ¶¶ 1, 19. Approximately 923 bus drivers are employed by VTA and each bus driver is assigned a home division or "yard." Evans Decl. ¶¶ 3, 4. Through bus and rail operations, VTA serves approximately 121,000 passengers per day. *Id.* ¶ 3.

Plaintiff Robert Estorga is a retired transit operator who drove buses for VTA. *See* VTA's Response to Plaintiffs' First Set of Requests for Admission at 2, Ex. B to Flynn Decl., ECF 94-4. After filing this action, Estorga sought and received conditional certification of a collective action under the FLSA "as to persons who are or have been employed by [VTA] and perform or performed services as a bus operator who are not members of [the] *Rai* settlement[1] class." *See* Amended Order Granting in Part and Denying in Part Motion for Conditional Certification of

---

[1] The *Rai* settlement is summarized in Section I.D *infra*.

1  Collective Action at 11, ECF 48.  Seventeen current or former VTA bus drivers subsequently

2  consented to join the instant action.  *See* Consent to Join forms, ECF 55 to 71.  Of these seventeen

3  "opt-in" plaintiffs, five have since been dismissed:  Emile Betti, Sukhvir Singh, Jacari Spencer,

4  Andre Gomez, and Jessie Cadimas-Rosa.  *See* ECF 82, 83, 84, 96, 99.  Thus, twelve opt-in

5  plaintiffs remain: James Butler, Gabriel Silva, George Lopez, Joseluis Solis, Karla Williams,

6  Kecia Kemp, Theresa Smith, Rodney Thomas, Marissa Diaz, Christopher Edwards, William

7  Gorman, and Cecilia Jovel.  *See* ECF 56, 59–60, 62–66, 68–71.

8  **B.  Run Assignments and Travel Time**

9  On a quarterly basis, VTA bus drivers bid on "runs," and can choose, according to

10  seniority, the runs and days off that they work.  Evans Decl. ¶ 5, ECF 93-3.  A "run" is effectively

11  a work assignment composed of one or more bus routes and may or may not start and end in the

12  same location.  *See* Cuff Decl. ¶¶ 4–5, 8, ECF 93-2.  Some runs are straight runs, where the

13  operator drives a single route throughout the day, while others are "split-shift" assignments, where

14  the operator drives two separate routes during the day.  *Id.* ¶¶ 4, 7.  Some runs begin and end at the

15  division yard, while other runs start in the yard and end at a relief point in the field, or vice versa.

16  *Id.* ¶ 9.  Alternatively, runs may both start and end at a relief point in the field.  *Id.*  Approximately

17  71% of biddable runs either start or end in the field, away from the division to which the driver is

18  assigned.  *Id.*  Some work assignments are "split-shift" assignments that include two separate runs

19  in a day, generally separated by a break time of one to four hours.  *Id.* ¶ 7.  In some cases, the

20  driver's second run of the day begins in a different location than where the first run ended.  *See id.*

21  ¶ 14; Russell Decl. ¶ 16, Ex. A to Flynn Decl., ECF 94-3.  Two types of travel time are relevant to

22  this case: "start-end" travel time and "split-shift" travel time.

23  "Start-end" travel time accrues when drivers start their first or only run of the day or end

24  their final or only run of the day in the field (i.e. away from a division).  *See* Cuff Decl. ¶ 11;

25  Russell Decl. ¶ 16.  For example, Run 4107 begins at 5:21 a.m. at Cerone Division and ends at

26  1:50 p.m. at the Great Mall ("GTMA").  Russell Decl. ¶ 16.  The run synopsis for Run No. 4107

27  lists 14 minutes of travel time.  *See* Ex. B to Russell Decl. at 1.  This travel time reflects the

28  amount of time to travel between the Great Mall and Cerone Division—in other words, the

amount of time for a driver to travel back to Cerone Division at the end of the run. *See* Russell Decl. ¶ 16. The allocated travel time—14 minutes in this example—is based on the time for a VTA bus or light rail to travel between the operator's home division and the relevant start/end point in the field, pursuant to the parties' collective bargaining agreement ("CBA"). *See* Cuff Decl. ¶ 11; CBA Part B, Section 11 – Travel Time, Ex. A to Russell Decl., ECF 94-3. This travel time is "paid at the Operator's straight time rate" and thus does not count toward the operator's overtime pay. *See* CBA Part B, Section 11 – Travel Time. However, the drivers are not required to actually travel between the yard and the relief point to receive this travel time payment; nor are the drivers required to use VTA-provided transportation if they do travel back to the yard. *See* Cuff Decl. ¶ 11. Instead, the drivers receive the payment regardless of whether they travel to/from the yard or use alternative means of transportation. *Id.* Estorga and nearly all the opt-in plaintiffs (collectively, "Plaintiffs") described situations where they did not travel back to the yard after ending a shift. *See* Estorga Depo. at 23:14-24:7, 29:8-25, 36:5-9, 52:1-24; Edwards Depo. at 25:7-10, 25:24-26:7; Butler Depo. at 24:13-17, 25:4-12, 29:20-30:9; Gorman Depo. at 32:22-33:25; Silva Depo. at 46:14-19; Solis Depo. at 22:19-23:6; Thomas Depo. at 29:5-25, Exs. D, C, A, E, H, I, J to Spellberg Decl., ECF 93-6.

"Split-shift" travel time accrues when the "split" or break between different runs performed by the same operator on the same day exceeds one hour, and the start point of the second run is at a different location than the end point of the first run. *See* Cuff Decl. ¶¶ 13, 14. When the split between such runs is one hour or less, drivers remain on duty and are paid for that entire split at the normal working rate, which thus counts toward overtime. *Id.*; *see also* CBA Part B, Section 3 – Breaks in Split Runs or Shifts, Section 4 – Overtime, Ex. A to Russell Decl., ECF 94-3. Where the split exceeds one hour, drivers are not on duty during the split. Cuff Decl. ¶ 13; CBA Part B, Section 3 – Breaks in Split Runs or Shifts. Run No. 4120 is an example of a split-shift assignment with a split between runs exceeding one hour. *See* Russell Decl. ¶ 16; Ex. B to Russell Decl. at 2. On Wednesdays, the driver first drives a run that begins at 1:43 p.m. at Cerone Division and ends at 2:51 p.m. back at Cerone Division. *Id.* However, the driver's second run of the day begins at 4:28 p.m. at the Great Mall ("GTMA") and ends at 12:39 a.m. at Cerone

Division.  *Id.*  The split between the two runs exceeds one hour—the time between 2:51 p.m. and 4:28 p.m.  Thus, the driver would be off duty during this split, although would be required to be present at 4:28 p.m. at GTMA to start the second run.  *See* Cuff Decl. ¶¶ 13, 14.  This necessitates "split-shift" travel.  *Id.*  Similar to "start-end" travel time, the "split-shift" travel time is based on the time for a VTA bus or light rail to travel between the end point of the driver's first run of the day and the start point of the driver's second run of the day.  *See* Cuff Decl. ¶ 14; CBA Part B, Section 11 – Travel Time, Ex. A to Russell Decl., ECF 94-3.  And like "start-end" travel, drivers are not required to actually use VTA transportation to travel between respective end and start points—the drivers are free to travel by any means and are free to use any excess or available time for personal reasons.  *See* Cuff Decl. ¶¶ 13,14.  Split-shift travel time is "paid at the Operator's straight time rate" and thus does not count toward the operator's overtime pay.  *See* CBA Part B, Section 11 – Travel Time.  Numerous opt-in plaintiffs have reported using portions of such splits to run errands, exercise, or perform other personal activities.  *See, e.g.*, Kemp Depo. at 41:13-18; Solis Depo. at 31:15-32:7; Silva Depo. at 38:5-21; Butler Depo. at 46:21-47:8; Edwards Depo. at 34:19-35:14, Exs. F, I, H, A, C to Spellberg Decl., ECF 93-6.

### C.    The Parties' Collective Bargaining Agreement

Amalgamated Transit Union Local 265 (the "Union") is the exclusive representative for all bus drivers employed by VTA.  *See* Russell Decl. ¶¶ 3, 6, ECF 94-3.  VTA and the Union have agreed to a collection bargaining agreement ("CBA") that establishes wages, hours, and numerous other terms and conditions of employment affecting VTA transit operators.  *See* Evans Decl. ¶ 6, ECF 93-3; CBA, Ex. A to Russell Decl., ECF 94-3.  The CBA consists of Part A which governs "General Provisions," Part B labeled the "Operating Sections," Part C labeled the "General Maintenance Section," and Part D, the "Information Services Section."  Russell Decl. ¶ 5; CBA, Ex. A to Russell Decl.  The CBA is for the period from October 1, 2015 to September 30, 2018.  *Id.*

Each quarter, VTA posts run synopses, which the drivers use to inform their bidding decisions.  Cuff Decl. ¶¶ 6–8.  The run synopses provide detailed information about the runs, such as whether a run is a straight run or split-shift assignment, the days of the runs, the start and end

times of the runs, and the location of the start and end points. Cuff Decl. ¶ 8; *see also* Synopsis of Runs, Ex. A to Cuff Decl., ECF 93-2. The synopses list the time allocated for actual driving, which is known as Platform Time ("TOT PLAT" on the run synopses). Cuff Decl. ¶ 4. The synopses also list various additional time for which the drivers will receive pay for operating each run, including, for example, Travel Time Pay ("TRAV TIME" on the run synopses), Elapsed Time ("ELAP TIME" on the run synopses), Daily Overtime ("OVER TIME" on the run synopses), and Allowed Time ("ALL TIME" on the run synopses). *See* Cuff Decl. ¶¶ 15, 17, 18.

Pursuant to the CBA, VTA provides travel time pay to drivers for "start-end" travel time and "split-shift" travel time. *See* Cuff Decl. ¶¶ 11, 14; CBA Part B, Section 11 – Travel Time, Ex. A to Russell Decl., ECF 94-3. Drivers do not receive overtime compensation for either "start-end" or "split-shift" travel time but do receive "straight time"—an amount based on the time for a VTA bus or light rail vehicle to travel between the respective points. *Id.*

Elapsed time is a premium payment provided when spread time exceeds 10.5 hours in a day. Cuff Decl. ¶ 15. Spread time ("SPD TIME" on the run synopses) applies to split-shift runs and is the total amount of time from when the driver first pulls out the vehicle during the first run of the day to when the driver pulls in the vehicle at the end of the last run of the day. *Id.* For example, if a driver works a five-hour run, has a two-hour off duty split, and then works a four-hour run, the driver's total spread time for the day is 11 hours. *Id.* The drivers receive a premium equal to half their pay rate for elapsed time, so in the preceding example, the driver would receive an elapsed time payment for 15 minutes at their normal pay rate (i.e. 0.5 times their pay rate for 30 minutes). *Id.* Elapsed time payments apply on top of any daily or weekly overtime payments and are made regardless of whether the driver worked more or less than 40 hours in a week. *See* Quail Decl. ¶ 4(d), ECF 93-5; Cuff Decl. ¶¶ 17, 18; CBA Part B, Section 9 – Elapsed Time.

Daily overtime at a rate of time and one-half is provided to drivers "for all work in excess of eight hours per day, exclusive of turn-in[2] and travel time, unless otherwise mandated by the Fair Labor Standards Act." CBA Part B, Section 4 – Overtime; *see also* Evans Decl. ¶ 6. This daily

---

[2] Turn-in time covers time for operators to turn in receipts at the end of a run or assignment, and is not pertinent to the present motions.

overtime rate applies even if a driver does not work over 40 hours in a week. Evans Decl. ¶ 6. In other words, VTA pays overtime "for all work in excess of eight hours in any regular shift or in excess of 40 hours in any work week." CBA Part C, Section 2 – Premium Pay.

Allowed time provides compensation for eight hours of work, even when an operator's shift is less than eight hours. Quail Decl. ¶ 4(a). In other words, allowed time brings the compensation for shifts of less than eight hours up to eight hours. *Id.* VTA treats allowed time as hours worked for purposes of calculating weekly overtime under the CBA. *Id.*

### D. *Rai* settlement

VTA operators covered under the same CBA as Estorga previously filed a hybrid Rule 23 class action/FLSA collective action against VTA, alleging that VTA did not pay them overtime as required under the FLSA. *See Rai v. Santa Clara Valley Transportation Authority*, Case No. 5:12-cv-04344-PSG (N.D. Cal., filed Aug. 17, 2012). All bus operators employed by VTA at the time of the lawsuit became a party to *Rai* unless they affirmatively opted out of the lawsuit. *See* Spellberg Decl. ¶ 4, ECF 93-6. Estorga opted out of the *Rai* lawsuit. *See* ECF 45 at 2. The claims in *Rai* included the two claims at issue in the instant action: unpaid overtime premiums for start-end and split-shift travel time. *See* Compl. (*Rai* Dkt.), ECF 1. The *Rai* lawsuit was resolved through a judicially approved settlement agreement. *See Rai* Settlement Agreement, Ex. L to Spellberg Decl., ECF 93-6. The *Rai* court approved the Settlement Agreement and entered Judgment accordingly. *See* Order of Final Approval, Ex. M to Spellberg Decl.; Judgment, Ex. N to Spellberg Decl.

With respect to start-end travel, the *Rai* Settlement Agreement provides, *inter alia*, that "VTA produced substantial evidence that [start-end] travel time was covered by the Portal-to-Portal Act and is therefore not compensable under the FLSA." *See* Settlement Agreement § 6.3.7, Ex. L to Spellberg Decl. With respect to split-shift travel time, the *Rai* Settlement Agreement provides, *inter alia*, that "VTA produced substantial evidence that VTA pays Operators for Split-Shift Travel Time for the 'running time' of a VTA bus or light rail vehicle, and pays numerous premiums . . . which are not required by federal or state law and that equal or exceed the amounts VTA would potentially pay based on Plaintiffs' claims for additional Split-Shift Travel Time

compensation." *Id.* § 6.3.8. This section also states that with respect to split-shift travel time, "[t]hese facts, and this conduct by VTA, satisfies VTA's legal obligations, and establishes that VTA is compliant with the FLSA and all state and local laws with respect to this issue." *Id.*

### E. *Estorga* arbitration

On June 16, 2014, the Union filed a grievance on behalf of Estorga, contending that VTA violated Sections 3 and 11 of Part B of the CBA by the way it calculated Estorga's pay for the time between two portions of one of Estorga's split shifts. *See* Grievance 2014-ATU-0039 Opinion & Award ("*Estorga* arbitration") at 5, Ex. C to Flynn Decl., ECF 94-5. The *Estorga* arbitration concerned a split-shift assignment worked by Estorga that included a 90-minute split and 47 minutes of travel time within that split. *Id.* at 5. The Union argued that because Estorga was "working" during his 47 minutes of travel time, Estorga' break was only 43 minutes, thus entitling Estorga to normal pay for that break under Section 3 of Part B of the CBA. *Id.* at 6. The arbitrator noted that "there is no evidence that any Operator other than [Estorga] ever had a break in a split shift of more than 60 minutes that included travel time sufficient to reduce the remainder of his or her break to less than 60 minutes." *Id.* at 6. The arbitrator ultimately concluded that Estorga's break was only 43 minutes and thus VTA violated Part B, Section 3, 4, and/or 11 of the CBA by not providing Estorga normal pay for a break of 60 minutes or less, *see id.* at 11, based on the arbitrator's interpretation that "the time [Estorga] spend traveling on a VTA shuttle from Gilroy to San Jose was work time under federal law and thus within the meaning of the portion of Part B, Section 4 [of the CBA], regarding the mandates of the FLSA," *id.* at 8. The arbitrator's award was approved by the Superior Court of California, County of Santa Clara. *See* Ex. D to Flynn Decl., ECF 94-6.

### F. Procedural history

On May 17, 2016, Estorga filed the complaint in this action on behalf of himself and others similarly situated, alleging that Defendant willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to compensate Estorga and those similarly situated at one and one-half times their regular rate for certain hours "worked" in excess of 40 hours in a workweek. *See* Compl. ¶¶ 1, 7–9, ECF 1; 29 U.S.C. § 207(a). On September 12, 2016, the Court

dismissed Plaintiffs' original complaint with leave to amend. *See* ECF 15. Estorga subsequently filed his first amended complaint ("FAC") on September 30, 2016. *See* FAC, ECF 27.

On June 15, 2017, the Court granted Estorga's motion to conditionally certify an FLSA collective action "as to persons who are or have been employed by [VTA] and perform or performed services as a bus operator who are not members of [the] *Rai* settlement class." *See* Amended Order Granting in Part and Denying in Part Motion for Conditional Certification of Collective Action at 11, ECF 48. The opt-in plaintiffs filed notices of consent to join the collective action between August 4, 2017 and September 11, 2017. *See* ECF 55 to 71.

The parties filed their respective motions for summary judgment on September 13, 2018. *See* ECF 93, 94. On November 1, 2018, the Court held a hearing on the motions for summary judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact," *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]."

*Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009).

### III.    DISCUSSION

Plaintiffs move for summary judgment of two issues: whether (1) "start-end" travel time and (2) "split-shift"[3] travel time constitute "hours worked" and are thus compensable under the FLSA. *See* Plaintiffs' MSJ at 1–2, ECF 94; Plaintiffs' Memorandum at 1, ECF 94-1. Plaintiffs seek overtime compensation for those two types of travel time only. *See* Plaintiffs' Opp'n at 1, ECF 101. Defendant moves for summary judgment of the same two issues as Plaintiffs, as well as two additional issues: whether (1) Defendant "may offset any liability with the overtime premiums it pays which are more generous than what is required by the FLSA"; and (2) that Defendant "acted in good faith and [did not] willfully violate[] the FLSA." *See* Defendant's MSJ at 2, ECF 93. The parties' motions are effectively cross-motions with respect to whether start-end travel time or split-shift travel time is compensable under the FLSA. Thus, the Court addresses the following issues in turn in Parts A–E of this section: (A) background principles concerning "hours worked" under the FLSA; (B) whether the drivers' start-end travel time is compensable under the FLSA; (C) whether the drivers' split-shift travel time is compensable under the FLSA; (D) whether VTA is entitled to offset any resulting liability with other overtime premium payments; and (E) whether VTA acted in good faith and did not willfully violate the FLSA.

As discussed below, Defendant's motion for summary judgment and Plaintiffs' motion for summary judgment are each GRANTED IN PART and DENIED IN PART.

### A.    "Hours Worked" Principles under the Fair Labor Standards Act

The Fair Labor Standards Act of 1938 ("FLSA") requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless an exemption[4] applies. 29 U.S.C. § 207(a)(1). To ensure compliance with this requirement, the FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's

---

[3] Plaintiffs also use the term "mid-shift" travel time. For consistency, the Court will use the term "split-shift" travel time.

[4] There is no dispute in this action that Estorga and the opt-in plaintiffs are non-exempt and eligible for overtime under the FLSA.

overtime provisions.  29 U.S.C. § 216(b).

The FLSA did not define "work" or "workweek," and in the early years after passage of the FLSA the Supreme Court interpreted those terms broadly.  In 1944 the Supreme Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, (1944), *superseded by statute*, Portal-to-Portal Act of 1947, *as recognized in Integrity Staffing Solutions Inc. v. Busk*, 135 S. Ct. 513 (2014).  In 1946, the Supreme Court defined the "statutory workweek" to "include[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691–92 (1946), *superseded by statute*, Portal-to-Portal Act of 1947, *as recognized in Integrity Staffing*, 135 S. Ct.  In applying these broad definitions, the Supreme Court found the time spent traveling between mine portals and underground work areas compensable, *see Tennessee Coal*, 321 U.S. at 598, as well as the time spent walking from timeclocks to work benches, *see Anderson*, 328 U.S. at 691–92.

These decisions by the Supreme Court "provoked a flood of litigation" prompting Congress to "respond[] swiftly."  *See Integrity Staffing*, 135 S. Ct. at 516.  In so responding, Congress passed the Portal-to-Portal Act of 1947, which exempts employers from liability for claims based on two categories of work-related activities as follows:

> "(a) Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject to any liability or punishment under the [FLSA], as amended, . . . on account of the failure of such employer . . . to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after [the date of the enactment of this Act]—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

§ 4, 61 Stat. 86–87 (codified at 29 U.S.C. § 254(a)).  In other words, home-to-work travel is non-compensable under the FLSA, unless a "contract or custom" exception applies.  *See* 29 U.S.C. § 254(b).  Approximately eight years after passage of the Portal-to-Portal Act, the Supreme Court explained that the "term principal activity or activities . . . embraces all activities which are an integral and indispensable part of the principal activities . . . . before or after the regular work shift, on or off the production line." *Steiner v. Mitchell*, 350 U.S. 247, 252–53, 256 (1956).

The Supreme Court has since held that "[a]n activity is [] integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform is principal activities." *Integrity Staffing*, 135 S. Ct. at 517 (finding that the warehouse employees' time spent waiting to undergo antitheft security screening and undergoing security screening was not compensable under the FLSA).  In *Integrity Staffing*, the Supreme Court further held that the Ninth Circuit "erred by focusing on whether an employer *required* a particular activity."  135 S. Ct. at 519 (emphasis in original).  Instead, the Supreme Court clarified "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*."  *Id.* (emphasis in original).  "If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address."  *Id.* (explaining that a "required activity" test would cover the walking in *Anderson*, 328 U.S. 680 (1946), that the Portal-to-Portal Act indisputably repudiated as compensable).  The Supreme Court further noted that "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad."  *Id.*

*Integrity Staffing* established an updated test for when a preliminary or postliminary activity is "integral and indispensable" to an employee's principal activities, and thus compensable under the FLSA.  135 S. Ct. at 519.  Providing clarity to the updated test, the *Integrity Staffing* opinion identifies activities from the Supreme Court's precedents that would or would not satisfy

the updated test. For example, "the time battery-plant employees spent showering and changing clothes because the chemicals in the plant were 'toxic to human beings'" would remain compensable under the updated test. 135 S. Ct. at 518 (citing *Steiner v. Mitchell*, 350 U.S. 247, 249, 251 (1956)). As another example, "the time meatpacker employees spent sharpening their knives because dull knives would 'slow down production' on the assembly line, 'affect the appearance of the meat as well as the quality of the hides,' 'cause waste,' and lead to accidents'" would remain compensable. *Integrity Staffing*, 135 S. Ct. at 518 (citing *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956)). On the other hand, "time poultry-plant employees spent waiting to don protective gear" would remain non-compensable under the FLSA because "such waiting was 'two steps removed from the productive activity on the assembly line.'" *Integrity Staffing*, 135 S. Ct. at 518 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005)).

Notably to the instant action, *Integrity Staffing* concerned only preliminary and postliminary activities at the beginning/end of a continuous workday. As the Supreme Court noted, "our precedents make clear[] [that] the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday." *Integrity Staffing*, 135 S. Ct. 513, 520 (Sotomayor and Kagan, J.J., concurring). In other words, *Integrity Staffing* did not address or modify the principles set forth in *IBP, Inc. v. Alvarez* regarding the "continuous workday rule" or what constitutes a "continuous workday" where the activity in question occurs "after the beginning of the employee's first principal activity and before the end of the employee's last principal activity," 546 U.S. 21, 28–29, 37 (2005).

## B. Start-End Travel Time

Defendant argues that Plaintiffs are not entitled to FLSA overtime for their start-end travel time because this travel constitutes "classic work-to-home commute time[] [that] has never been compensable under the FLSA." *See* Defendant's MSJ at 12, ECF 93. Defendant contends that the start-end travel at issue in this case is a form of "walking, riding or traveling to and from the actual place of performance of the principal activity" or "activities which are preliminary to or postliminary to said principle activities" and thus not compensable under the FLSA pursuant to the Portal-to-Portal Act. *See* Defendant's MSJ at 13 (citing Portal-to-Portal Act, 29 U.S.C.

§ 254(a)(1)-(2).  Defendant further argues that the Portal-to-Portal Act's "contract or custom" exception "is narrow and only applies to work that would be compensable if not for the Portal Act," and that Plaintiffs' start-end travel was not compensable even before passage of the Portal-to-Portal Act.  *Id.* at 3 (citing 29 C.F.R. § 790.7), 13.  Plaintiffs counter it "may be possible that under particular circumstances, start-end travel time is 'integral and indispensable' within the meaning of the FLSA, and may thus be compensable despite the Portal-to-Portal Act," but that the Court need not make that determination because "the start-end travel time at issue in this case is contractually compensable [under 29 U.S.C. § 254(b), the 'contract or custom' exception]."  *See* Plaintiffs' Opp'n at 13.  As discussed below, the Court agrees with Defendant that Plaintiffs' start-end travel time is not compensable under the Portal-to-Portal Act and does not fall within the "contract or custom" exception.

### 1. The start-end travel time is not "integral and indispensable" to the drivers' principal activity of operating VTA buses.

Ordinary time spent travelling to and from the place where employees perform their principal job duties is not compensable under the FLSA.  *Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015) (applying *Integrity Staffing* to hold time firefighters spent transporting equipment to and from their home fire station to work assignments at other fire stations not compensable because it was not "integral and indispensable" to the firefighters' "principal activity"); *see also Rutti v. Lojack Corp.*, 596 F.3d 1046, 1061 (9th Cir. 2010) (time spent traveling in employer-provided vehicle to first job site of day and from last job site of day, which varied daily, was non-compensable travel time); *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998) ("Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location.").  In other words, time spent merely traveling to the worksite, without more, is not compensable under the FLSA.

Furthermore, multiple courts have concluded that start-end travel time by transit operators to/from points in the field is not compensable under the FLSA.  *See United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999) (holding time spent travelling on employer-provided shuttles to and from first or last or only shift of day "is classic commuting-to-

14

work time, excluded from compensation by the Portal-to-Portal Act"); *Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority (MBTA)*, 94 F. Supp. 3d 47 (D. Mass. 2015) (holding start-end travel time is not compensable as hours worked because it was not part of operators' principal activity); *Margulies v. Tri-County Metropolitan Transp. Dist. of Oregon*, 2015 WL 4066654 (D. Ore. July 2, 2015) (finding start-end travel time non-compensable under the FLSA because it was distinct from transit operator's principal activity). Although *Albuquerque* is an out-of-circuit case, *Albuquerque* is instructive. The parties did not cite Ninth Circuit case law concerning start-end or split-shift travel time of the sort here; nor is the Court aware of Ninth Circuit case law directly on point. Moreover, it is the Court's position that *Albuquerque* properly applied Supreme Court precedent.

The facts presented in *Albuquerque* are similar to this case. In *Albuquerque*, "the undisputed evidence [] establish[ed] that the drivers are obligated only to appear on time at the particular place from which their first bus runs begins, whether that is the City garage or some relief point. At the end of the day, following their last bus run, they may go home any way they choose, by any means they choose." 178 F.3d at 1120. The *Albuquerque* court ruled that "[t]he fact that some of [the drivers] may choose to use a City shuttle to go to or from the City garage, as a part of their commute at the beginning or end of their workday, does not transform that time into hours worked under the FLSA and the Portal-to-Portal Act." *Id.* Here, Plaintiffs' start-end travel maps directly to the start-end travel in *Albuquerque*. It is undisputed that VTA bus drivers need only arrive at the start point of a run on time, without first stopping by the division or yard. *See* Cuff Decl. ¶ 11, ECF 93-2. It is likewise undisputed that at the end of the last run of the day, drivers may depart by any means of their choice. *Id.* Thus, even though some drivers may use VTA-provided transportation to travel to/from the yard and the start/end point of a run in the field, this alone "does not transform that [travel] time into hours worked under the FLSA and the Portal-to-Portal Act." *Albuquerque*, 178 F.3d at 1120.

The Court notes that Defendant discusses *Gilmer v. Alameda-Contra Transit Dist.*, 2010 WL 289299 (N.D. Cal. Jan. 15, 2010), in arguing that the start-end travel time at issue in this case is excluded by the Portal-to-Portal Act. *See* Defendant's MSJ at 15–17. In this sense, Defendant

misreads *Gilmer*. *Gilmer*'s discussion and holding with respect to start-end travel time concerned the "contract or custom" exception to the Portal-to-Portal Act, and thus whether such travel time was compensable under the FLSA "prior to the enactment of the Portal Act," *see* 2010 WL 289299, at *5 (N.D. Cal. Jan. 15, 2010). As such, the Court's analysis of *Gilmer* is contained within Section III.B.2 on the contract or custom exception.

Applying *Integrity Staffing* and *Balestrieri* to Plaintiffs' start-end travel time results in the same outcome as reached by the *Albuquerque* court. *Integrity Staffing* instructs that "[a]n activity is [] integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform is principal activities." *Integrity Staffing*, 135 S. Ct. at 517. "The integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* at 519 (emphasis in original). Here, the drivers are employed to perform the principal activity of operating VTA buses. During start-end travel, there is no evidence that the bus drivers perform any task or are expected to perform any task to prepare for their principal activity of operating a bus, except travel. In other words, the bus drivers do not take "special" steps to prepare for work in traveling to work. *Cf. IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) (finding time spent by meat processing plant employees walking between locker rooms and production areas after donning special safety gear in the locker rooms not excluded by Portal-to-Portal Act). Moreover, the drivers are not required to actually travel between the yard and the start/end point of a run—the drivers may simply commute directly from home to work (the start point of the run), or work (the end point of the run) to home. *See* Cuff Decl. ¶ 11, ECF 93-2. Many drivers do precisely that. *See, e.g.*, Estorga Depo. at 23:14-24:7, 29:8-25, 36:5-9, 52:1-24; Edwards Depo. at 25:7-10, 25:24-26:7; Butler Depo. at 24:13-17, 25:4-12, 29:20-30:9, Exs. D, C, A to Spellberg Decl., ECF 93-6. Nor are the drivers required to use VTA-provided transportation if they do travel from the yard to the run, or vice versa. *See* Cuff Decl. ¶ 11. In *Balestrieri* the Ninth Circuit held that the firefighters' travel time to their home station was "not 'indispensable'" because the firefighters were "free to take [their] gear home . . . [and thus could] go to the visiting station for the assigned shift without even stopping by [their] home station." 800 F.3d at 1101. Just like the firefighters in

*Balestrieri*, the bus drivers may travel to/from work without stopping by their home division or yard. Accordingly, the drivers' start-end travel time is likewise not "indispensable." *Balestrieri*, 800 F.3d at 1101.

### 2. The start-end travel time is not compensable by contract or custom.

It is undisputed that pursuant to the CBA drivers receive ordinary pay ("straight time"), but not overtime, for start-end travel time. *See* Cuff Decl. ¶¶ 11, 14, ECF 93-2; CBA Part B, Section 11 – Travel Time, Ex. A to Russell Decl., ECF 94-3. However, whether the CBA and that "straight time" pay renders start-end travel time compensable under the FLSA *prior to* enactment of the Portal-to-Portal Act is in dispute. *See* Defendant's MSJ at 12–13, Plaintiffs' Opp'n at 10–13. Plaintiffs argue that the "contract or custom" exception (29 U.S.C. § 254(b)) to the Portal-to-Portal Act applies and that the start-end travel time is therefore compensable under FLSA principles prior to enactment of the Portal-to-Portal Act. *See* Plaintiffs' Memorandum at 9–10; Plaintiffs' Opp'n at 10–11. Defendant does not dispute that the "contract or custom" exception is in play due to straight time pay for start-end travel time under the parties' CBA, but instead counters that the start-end travel is home-to-work commute time that "has always been non-compensable, even before Congress passed the Portal Act." *See* Defendant's Reply at 4, ECF 103. For the reasons discussed below, the Court agrees with Defendant.

Even prior to enactment of the Portal-to-Portal Act of 1947, ordinary travel time from home to work was not considered hours worked. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691–92 (1946). As stated in the Code of Federal Regulations:

> [29 U.S.C. § 254(b)] provides that the employer shall not be relieved from liability if the activity is compensable by express contract or by custom or practice not inconsistent with an express contract. Thus traveltime at the commencement or cessation of the workday which was originally considered as working time under the [FLSA] (such as underground travel in mines or walking from time clock to work-bench) need not be counted as worktime unless it is compensable by contract, custom or practice. If compensable by express contract or by custom or practice not inconsistent with an express contract, such travel time must be counted in computing hours worked. **However, ordinary travel from home to work (see § 785.35) need not be counted as hours worked even if the employer agrees to pay for it**.

29 C.F.R. § 785.34 (emphasis added). Thus, the "contract or custom" exceptions to the Portal Act do not render compensable time that would not otherwise have been compensable under the FLSA. 29 C.F.R. § 790.7 ("[E]ven where there is a contract, custom, or practice to pay for time spent in such a 'preliminary' or 'postliminary' activity, section 4(d) of the Portal Act does not make such time hours worked under the [FLSA].").  Accordingly, Plaintiffs' start-end travel time, even though paid at straight time under the CBA, is not properly counted for overtime purposes if it is considered travel from work to home.

Here, the Court finds that that Plaintiffs' start-end travel is considered travel from work to home.  As previously discussed, the *Albuquerque* court faced essentially the same factual situation with respect to start-end travel time and ruled that "the fact that a driver may end his workday at a relief point, where his own vehicle is unavailable, does not transform what would otherwise be a simple work-to-home commute into compensable hours worked."  178 F.3d 1109, 1120–21 (10th Cir. 1999).  *Albuquerque* additionally noted that "[w]hile it may be more awkward or inconvenient to arrange for transportation to and from work where the employees, like the drivers here, may begin or end their work day at diverse locations, such awkwardness or inconvenience does not change an otherwise non-compensable commute into compensable work time."  *Id.* at 1121. While *Albuquerque* is an out-of-circuit case, the Court finds *Albuquerque* instructive.  Moreover, Plaintiffs' start-end travel time is unlike the travel time in *Tennessee Coal* and *Anderson* that the Supreme Court found compensable under the FLSA prior to enactment of the Portal-to-Portal Act. In those two cases the Supreme Court found compensable the time spent traveling between mine portals and underground work areas, *see Tennessee Coal*, 321 U.S. 590, 598 (1944), and the time spent walking from timeclocks to work benches, *see Anderson*, 328 U.S. 680, 691–92 (1946), respectively.  Thus in both *Tennessee Coal* and *Anderson*, all employees were actually at the worksite prior to the travel in question and required to perform the travel, unlike the Plaintiffs here, who may simply arrive at the start point of a run or leave from the end point of a run to/from home or any other location, by any means of their choice.

Plaintiffs point to *Gilmer v. Alameda-Contra Transit Dist.*, which also addressed start-end travel time but held that such time for operators of bus routes throughout Alameda and Contra

Costa counties "is compensable under the FLSA [prior to enactment of the Portal Act]." 2010 WL 289299, at *7 (N.D. Cal. Jan. 15, 2010). *Gilmer* also concerned start-end travel time based on bus routes that started and ended at different points and the "contract or custom" exception to the Portal-to-Portal Act. *Id.* at *1, *5. The *Gilmer* court disagreed with *Albuquerque*'s ruling that start-end travel time for bus operators is ordinary work-to-home commute time; however, the *Gilmer* court's holding turned on its finding that "[a]bsent fortuitous circumstances, the employees must spend time returning to their starting point before beginning their commute home." *Gilmer*, 2010 WL 289299, at *6. In other words, the *Gilmer* court found that the bus operators were effectively required to spend time actually returning to their original starting point before beginning their commute home or to another location. *Id.* Here, to the contrary, there is no such requirement, effective or otherwise. *See* Estorga Depo. at 23:14-24:7, 29:8-25, 36:5-9, 52:1-24; Edwards Depo. at 25:7-10, 25:24-26:7; Butler Depo. at 24:13-17, 25:4-12, 29:20-30:9; Gorman Depo. at 32:22-33:25; Silva Depo. at 46:14-19; Solis Depo. at 22:19-23:6; Thomas Depo. at 29:5-25, Exs. D, C, A, E, H, I, J to Spellberg Decl., ECF 93-6 (Estorga and numerous opt-in plaintiffs describing not starting at or returning to the yard when beginning/ending a run). *Gilmer* is thus distinguishable.

In addition, Plaintiffs appear to argue that Defendant already treats travel time payments under the CBA as "time worked," rendering that time compensable for overtime purposes. *See* Plaintiffs' Opp'n at 14. This argument fails. The parties' CBA explicitly states "[t]ime and one-half shall be paid for all work in excess of eight hours per day, exclusive of [] travel time." CBA Part B, Section 4 – Overtime, Ex. A to Russell Decl., ECF 94-3; *see also* Evans Decl. ¶ 6, ECF 93-3. Finally,[5] Plaintiffs point to the *Estorga* arbitration award in arguing that start-end travel time is compensable under the contract or custom exception to the Portal-to-Portal Act. *See* Plaintiffs' Opp'n at 14–15. However, the *Estorga* arbitration had nothing to do with start-end travel time, as Plaintiffs readily admit. *Id.* at 8 n.24. Thus, the *Estorga* arbitration award is of no import here.

---

[5] Plaintiffs also discuss a California Department of Labor Standards Enforcement decision under California law, *see* Plaintiffs' Memorandum at 11, that the Court need not and does not address.

### 3. Conclusion

In conclusion, the Court finds that Plaintiffs' start-end travel time is not compensable under the FLSA. Accordingly, VTA's motion with respect to start-end travel time is GRANTED and Estorga's motion with respect to start-end travel time is DENIED.

### C. Split-Shift Travel Time

Split-shift travel occurs when the "split" or break between runs performed by the same operator on the same day exceeds one hour, and the start point of the second run is at a different location than the end point of the first run. *See* Cuff Decl. ¶¶ 13, 14, ECF 93-2. Drivers are not on duty during split shifts with breaks exceeding one hour. Cuff Decl. ¶ 13; CBA Part B, Section 3 – Breaks in Split Runs or Shifts, Ex. A to Russell Decl., ECF 94-3. Wait time between runs is not at issue in this case, but only split-shift travel time itself. *See* Plaintiffs' Opp'n at 1, ECF 101.

Plaintiffs argue that split-shift travel time "is [] compensable for a [] fundamental reason: [split]-shift travel occurs during the work day." Plaintiffs' Memorandum at 15, ECF 94-1. Plaintiffs further argue that under case law including but not limited to *Alvarez*, *Albuquerque*, and *Gilmer*, split-shift travel time "is therefore not preliminary or postliminary, and not covered by the Portal-to-Portal Act." Plaintiffs' Memorandum at 15. Defendant acknowledges that multiple courts have ruled that split-shift travel is compensable under the FLSA, but counters that "under *Integrity Staffing*, decided after *Albuquerque*, this time is properly characterized as commute time because it is not 'integral and indispensable' to the 'principal activity' of operating a bus or light rail vehicle." *See* Defendant's Opp'n at 22, ECF 100. For the reasons discussed below, the Court agrees with Plaintiffs.

Contrary to Defendant's suggestion, *Integrity Staffing* does not speak to activities during the workday itself. Instead, *Integrity Staffing* interpreted the FLSA, as amended by the Portal-to-Portal Act, and concerned only preliminary and postliminary activities at the beginning/end of a continuous workday. 135 S. Ct. at 515. The Supreme Court noted, "our precedents make clear[] [that] the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday." *Integrity Staffing*, 135 S. Ct. 513, 520 (Sotomayor and Kagan, J.J., concurring). In other words, *Integrity Staffing* did not address or modify the principles set forth in *IBP, Inc. v.*

*Alvarez*, 546 U.S. 21 (2005) with respect to travel time during a continuous work day. In *Alvarez*, the Supreme Court explained that "[under] our prior decisions interpreting the FLSA, the Department of Labor has adopted the continuous workday rule, which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" 546 U.S. at 28–29. *Alvarez* held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 4(a) of the Portal-to-Portal Act], and as a result is covered by the FLSA." 546 U.S. at 37.

Here, there is no dispute that under split-shift work assignments, the drivers perform a principal activity (operating a VTA bus) both before and after the split between the first and second runs of the day. Thus, *Alvarez* indicates that a driver's split-shift work assignment occurs within the same workday, which would remove split-shift travel time from the auspices of *Integrity Staffing* and the Portal-to-Portal Act. *See* 546 U.S. at 28–29. To get around *Alvarez* and the "continuous workday" rule, Defendant argues that "there is no basis to conclude that *all activity* within a single 24-hour period must be considered one 'work day,'" and that the Court should effectively treat each run of a split shift as a separate work day. *See* Defendant's Opp'n at 22–23 (emphasis in original). In support, Defendant cites *Mitchell v. JCG Industries, Inc.*, a Seventh Circuit decision stating "[w]orkers given a half-hour lunch or other meal break from work are in effect working two four-hour workdays in an eight-and-a-half-hour period." 745 F.3d 837, 839 (7th Cir. 2014) (holding that changing time activities for poultry plant employees were not compensable at the start/end of the workday or before/after meal breaks). The *Mitchell* court acknowledged that 29 C.F.R. § 790.6(b) "defines 'workday' to mean, 'in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities,'" 745 F.3d at 840, but found "there is compelling reason to recognize an exception in this case" in the context of changing time and meal breaks, *id.*

The Court finds that the Seventh Circuit's holding is an outlier in its determination that an off-duty 30-minute lunch break creates two separate four-hour work days under the FLSA.

Notably, no court in the Ninth Circuit has cited *Mitchell* and no court outside of the Seventh Circuit has cited *Mitchell* favorably on this point. This Court declines to follow *Mitchell*.

More persuasive is the Tenth Circuit's holding in *Albuquerque*. The *Albuquerque* court addressed a similar argument with respect to split-shift travel like the split-shift travel in the instant action, and rejected the notion that "each shift is a principal activity in a separate workday." 178 F.3d 1109, 1119 (10th Cir. 1999). The *Albuquerque* court further noted that unlike other optional travel time, "the drivers *must* get to and from diverse relief points if they are to perform their principal activity of driving the particular bus route assigned them." *Id.* at 1120 (emphasis in original); *see also Margulies*, 2015 WL 4066654, at *13–14 (D. Ore. July 2, 2015) (applying *Albuquerque* and finding split-shift travel time compensable); *Gilmer*, 2010 WL 289299, at *8 (N.D. Cal. Jan. 15, 2010) (same). The Court finds *Albuquerque* persuasive. Even where the VTA bus drivers have a lengthy split and/or perform personal errands during the split, the drivers are ultimately *required* to be present at a different geographical location to start their second run of the workday, unlike optional start-end travel time to/from the yard. Based on virtually identical facts, the *Albuquerque* court found that even though drivers used the remainder of split-shift periods for "purely personal pursuits," the drivers' "travel to and from such [split-shift] points [are] a necessary part of their principal activity of driving particular bus routes for the City." 178 F.3d at 1119. The *Albuquerque* court thus affirmed the district court's finding that the drivers' split-shift travel time was "integral and indispensable." *Id.* at 1118. Here, the VTA bus drivers' split-shift travel time is likewise necessary and "integral and indispensable" to their principal activity of driving assigned bus routes for the VTA, and thus compensable under the FLSA. *See id.* at 1119–20.

Moreover, VTA treats split shifts as effectively one work assignment—the run synopses measure spread time from the beginning of the first run of the day to the end of the second run of the day. *See* Cuff Decl. ¶ 15, ECF 93-2. In other words, VTA reflects the driver's workday as starting at the beginning of the first run, and ending at the conclusion of the second run. This approach is consistent with 29 C.F.R. § 790.6(b) (defining the workday as "the period between the commencement and completion on the same workday of an employee's principal activity or

activities").

Defendant cites 29 C.F.R. § 785.16(b) for the proposition that "idle time is not working time." *See* Defendant's Opp'n at 22. However, this regulation concerns waiting time at a single location, not travel time between locations, and is thus inapplicable to split-shift travel time. Finally, the Court notes that Defendant does not argue that split-shift travel time is excluded as compensable under the FLSA absent the Portal-to-Portal Act.

In sum, the Court concludes that Plaintiffs' split-shift travel time is compensable under the FLSA. Accordingly, VTA's motion with respect to split-shift travel time is DENIED and Estorga's motion with respect to split-shift travel time is GRANTED.

### D. Offset to FLSA Overtime Liability based on other Premium Overtime Payments

Defendant moves for summary judgment that "[VTA] may offset any [start-end or split-shift overtime] liability with the overtime premiums it pays which are more generous than what is required by the FLSA." Defendant's MSJ at 2, ECF 93. Specifically, Defendant contends it is entitled to a credit against start-end/split-shift overtime liability for three different types of payments: (1) "elapsed time" payments; (2) "weekly overtime payments"; and (3) "holiday pay equivalent to 2.5 times the operators' normal pay." *Id.* at 20, 22. Plaintiffs argue that none of these three types of payments qualify as "offsets" under 29 U.S.C. § 207. *See* Plaintiffs' Opp'n at 17–18. It is undisputed that Defendant makes these payments—what is in dispute is whether the payments qualify as offsets under the FLSA. For the reasons discussed below, the Court agrees with Defendant that all three payment types do so qualify.

Under the FLSA, certain extra compensation provided to employees for work—compensation that is not otherwise required by the FLSA—may be credited against any overtime premiums owed under the FLSA. *See* 29 U.S.C. § 207(h) ("Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection [207] (e) shall be creditable toward overtime compensation payable pursuant to this section."). The available credits include premiums paid for:

> (5) "[C]ertain hours worked by the employee in any day of workweek because such hours are hours worked in excess of eight in a day or in

excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours";

(6) "[W]ork by the employee on Saturdays, Sundays, [or] holidays . . . where such premium[s] [are] not less than one and one-half times the rate . . . for like work performed in nonovertime hours on other days"; and

(7) "[Work by the employee], in pursuance of an applicable [] collective-bargaining agreement, for work outside of the hours established [] by the [] agreement as the basic, normal, or regular workday [] or workweek."

29 U.S.C. § 207(e)(5)-(7). The Court addresses in turn Defendant's "elapsed time" payments, weekly overtime payments, and holiday pay.

### 1. Elapsed time payments

Elapsed time is a premium payment provided for spread time that exceeds 10.5 hours in a day. Cuff Decl. ¶ 15, ECF 93-2. Spread time applies to split-shift runs and is the total amount of time from when the driver first pulls out the vehicle during the first run of the day to when the driver pulls in the vehicle at the end of the last run of the day. *Id.* The drivers receive a premium equal to half their pay rate for elapsed time. *Id.* VTA also provides "extra board" operators— operators who are essentially on-call—with an elapsed time payment equal to the full value of their hourly pay for spread time greater than 11 hours. *See* Cuff Decl. ¶¶ 7, 15. Elapsed time payments apply on top of any daily or weekly overtime payments and are made regardless of whether the driver worked more or less than 40 hours in a week. *See* Quail Decl. ¶ 4(d), ECF 93-5; Cuff Decl. ¶¶ 17, 18; CBA Part B, Section 9 – Elapsed Time, Ex. A to Russell Decl., ECF 94-3.

Defendant argues that it is entitled to use such elapsed time payments to offset overtime liability because the elapsed time payments "constitute premiums for work" under either 29 U.S.C. § 207(e)(5) or (e)(7). *See* Defendant's MSJ at 21. Plaintiffs counter that "[e]lapsed time is . . . a differential in pay for working a longer shift," and that "[s]hift differentials may not be credited to overtime, as they are a part of an employee's regular rate of pay." *See* Plaintiffs' Opp'n at 18. In support, Plaintiffs cite two cases, *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948), and *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003). As an initial matter, the Court notes that *Bay Ridge* was decided prior to enactment of the FLSA's statutory provisions

24

that permit crediting of overtime premiums against overtime liability—after *Bay Ridge*, "Congress responded quickly, and within months of the [*Bay Ridge*] decision, amended the FLSA expressly to permit crediting," *Swift v. AutoZone, Inc.*, 806 N.E.2d 95, 99 (Mass. 2004).

In any event, contrary to Plaintiffs' assertion, neither *Bay Ridge* nor *O'Brien* dictates that the elapsed time payments made to VTA bus drivers are properly considered shift differential payments. In *Bay Ridge*, the Supreme Court explained that "[the employees'] high [shift differential] pay was not because they had previously worked but because of the disagreeable hours they were called to labor." 334 U.S. at 475. In other words, the shift differential in *Bay Ridge* was not tied to or based on other work performed by the employees, but only the "disagreeable hours" themselves. *Id.* Here, the "elapsed time" payments to VTA drivers are unlike the shift differential payments in *Bay Ridge*. The drivers' elapsed time payments do not depend on the time of day of the hours worked, but only require spread time exceeding 10.5 hours. Cuff Decl. ¶ 15. I.e., two shifts could each contain equally "disagreeable" hours from 5 p.m. to midnight, but whether elapsed time payments are made would depend on when the first run of the day began—either at or later than 1:30 p.m., or sometime earlier such that spread time exceeded 10.5 hours. These earlier hours would be during the normal day and not "disagreeable." *See Bay Ridge*, 334 U.S. at 451 ("basic working day" was between 8 a.m. and noon and between 1 p.m. and 5 p.m.). Thus, the elapsed time payments do not depend on the time of the hours themselves.

*O'Brien* is similarly unhelpful to Plaintiffs. In *O'Brien*, the shift differential was paid when "[a]ny officer [was] required to work a nighttime shift," and did not depend on other hours worked. 350 F.3d at 288. As described above, the VTA drivers' elapsed time payments are not triggered simply by "nighttime" work or other work at a specific time of the day, but instead by total spread time. Thus, *O'Brien* is inapposite.

Plaintiffs make no additional arguments with respect to elapsed time payments, other than including a citation to *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 331–32 (3d Cir. 2016), *cert denied*, 138 S. Ct. 2563 (holding that paid meal breaks do not fall within the statutory provisions of § 207(e)). In *Smiley*, the Third Circuit found that the employer treated paid meal breaks as "hours worked" and thus was not a premium within the meaning of 29 U.S.C. § 207(e).

839 F.3d at 328, 333–34.  Here, unlike the paid meal breaks in *Smiley*, elapsed time is not treated as "hours worked," but instead a premium that "shall be added in excess of a day's work," *see* CBA Part B, Section 9 – Elapsed Time, Ex. A to Russell Decl., ECF 94-3.

In sum, the Court finds that VTA's elapsed time payments are a premium paid for hours "in excess of the employee's normal working hours or regular working hours," *see* 29 U.S.C. § 207(e)(5), or "in pursuance of [the] [CBA], for work outside of the hours established [] by the [CBA] as the basic, normal, or regular workday," *see* 29 U.S.C. § 207(e)(7).

### 2. Weekly overtime payments

Defendant next argues that it is entitled to offset under § 205(e)(5) its FLSA overtime liability with its weekly overtime payments that "are more generous than those required under the FLSA" in two ways.  *See* Defendant's MSJ at 22.  First, that "[VTA] pays drivers daily overtime for work in excess of eight hours, even though such payments are not required under the FLSA."  *Id.*  Second, that VTA "counts sick time as hours worked for purposes of calculating weekly overtime, even though sick time does not count as hours worked under the FLSA."  *Id.*  Plaintiffs do not dispute that VTA's overtime payments are more generous than required under the FLSA, but instead argues that "sick time may be covered . . . but only if compensation for that . . . sick time is paid at time and one-half," and that "determination of the amount of any applicable overtime offset, if any, is [not] properly made . . . at summary judgment."  Both of Plaintiffs' arguments miss the point.

First, Defendant is not arguing that its sick leave payments directly offset overtime liability, but instead that VTA's sick leave practices are more generous than the FLSA requirements, which leads to increased overtime premiums paid to the drivers by VTA.  *See* Defendant's Reply at 10, ECF 103.  For example, a driver may take sick leave for 8 hours during a workweek, and work 40 additional hours.  VTA would then pay overtime on 8 hours for that week, whereas the FLSA would require none.  *See* Defendant's MSJ at 22 n.8; *see also Kohlheim v. Glynn County, Georgia*, 915 F.2d 1473, 1481 (11th Cir. 1990) (citing 29 U.S.C. § 207(h)) ("The FLSA mandates that 'extra' compensation paid by an employer be credited toward overtime compensation due.").  Plaintiffs do not dispute that such "extra" compensation *based on* VTA's

26

sick leave practices qualifies for an offset under 29 U.S.C. § 205(e)(5).  Nor do Plaintiffs dispute that VTA's daily overtime payments qualify for an offset under § 205(e)(5).  Indeed, "where an employee receives premium pay for each day she works over eight hours, that pay is credited toward the overtime pay requirements of Section 207(a)." *Conner v. Celanese, Ltd.*, 428 F. Supp. 2d 628, 636 (S.D. Tex. 2006).

Second, contrary to Plaintiffs' assertion, Defendant is not seeking a determination of any particular overtime offset amount, but instead a "ruling that it may use certain types of premium pay it offers to employees as a credit against any overtime liability," *see* Defendant's Reply at 8, ECF 103.  Plaintiffs point to no legal authority that would preclude summary judgment of this issue; nor do Plaintiffs raise any genuine dispute of material fact.  Accordingly, the Court finds Defendant's motion with respect to offsetting overtime liability with premium payments appropriate for summary judgment.

In sum, the Court finds that "extra" compensation paid by VTA for both daily overtime and weekly overtime where sick leave is counted for purposes of the overtime calculation qualifies for an offset under 29 U.S.C. § 205(e)(5).

### 3.  Holiday pay

Defendant's final offset argument is that its "holiday pay equivalent to 2.5 times the operators' normal pay" qualifies for an offset under 29 U.S.C. § 207(e)(6).  It is undisputed that VTA provides such holiday pay.  *See* Quail Decl. ¶ 4(e), ECF 93-5; CBA Part A, Section 10 – Holiday Pay, Ex. A to Russell Decl., ECF 94-3.  Plaintiffs contend that non-working holiday time may be credited against overtime liability "only if compensation for that non-working holiday [] time is paid at time and one-half."  Plaintiffs' Opp'n at 18–19.  However, Defendant is not arguing for an offset for non-working holiday time, but instead for "when [the drivers] work on holidays." *See* Defendant's Reply at 10, ECF 103.  With respect to working holidays, Plaintiffs concede that "pay for work on holidays may fall within the provision of 29 U.S.C. § 207(e)(6)."  Plaintiffs' Opp'n at 18.  Indeed, holiday pay at 2.5 times the normal rate for work performed on a holiday falls squarely within § 207(e)(6).  The Court therefore finds that VTA's holiday pay for work performed on holidays qualifies for an offset.

### 4. Conclusion

Defendant's motion for summary judgment with respect to offsetting start-end/split-shift overtime liability with other premium payments it makes is GRANTED to the extent those other payments include elapsed time payments, daily overtime payments, weekly overtime payments based on sick leave, and holiday pay as described above.

### E. Good Faith and Willfulness

Defendant moves for summary judgment that "[VTA] has acted in good faith and there is no evidence supporting a finding that [VTA] acted willfully to violate the FLSA." Defendant's MSJ at 23. Plaintiffs' opposition does not address Defendant's good faith argument, except one brief mention of "good faith" in Plaintiffs' argument regarding willfulness. *See* Plaintiffs' Opp'n at 19–20. Thus, the Court first discusses willfulness followed by good faith.

### 1. Willfulness

The statute of limitations for FLSA claims is either two or three years depending on the willfulness of the violation. 29 U.S.C. § 255(a). Suits arising from "a willful violation" of the FLSA "may be commenced within three years after the cause of action accrued." *Id.* It is Plaintiffs' burden to show that Defendant acted in a "willful" manner, thus extending the statute of limitations from two to three years. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). A willful violation of the FLSA occurs where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Id.* at 133. A "good-faith but incorrect assumption that a pay plan complied with the FLSA" does not permit a finding of willfulness. *Id.* at 135. Moreover, if "an employer acts reasonably," or even "unreasonably, but not recklessly," in determining its legal obligation, "its action cannot be deemed willful." *Id.* at 135 n.13.

Defendant argues that it is Plaintiffs' burden to show willfulness and that Plaintiffs "cannot demonstrate that [VTA] willfully violated the FLSA [because] a federal court judgment explicitly held that [VTA's] pay practices complied with the law." Defendant's MSJ at 24–25. Here, Defendant is referring to the judicially approved *Rai* settlement agreement. The *Rai* litigation was between VTA and its transit operators and included the same start-end and split-split travel time

28

questions at issue in the instant action among other issues.  *See Rai v. Santa Clara Valley Transportation Authority*, Case No. 5:12-cv-04344-PSG (N.D. Cal., filed Aug. 17, 2012).  Estorga opted out of the *Rai* lawsuit.  *See* ECF 45 at 2.  The *Rai* lawsuit was resolved through a judicially approved settlement agreement.  *See Rai* Settlement Agreement, Ex. L to Spellberg Decl., ECF 93-6.  The *Rai* court approved the Settlement Agreement and entered Judgment accordingly.  *See* Order of Final Approval, Ex. M to Spellberg Decl.; Judgment, Ex. N to Spellberg Decl.

Notably, the *Rai* settlement provides that "VTA produced substantial evidence that [start-end] travel time was covered by the Portal-to-Portal Act and is therefore not compensable under the FLSA."  *See* Settlement Agreement § 6.3.7, Ex. L to Spellberg Decl.  With respect to split-shift travel time, the *Rai* Settlement Agreement further provides "VTA produced substantial evidence that VTA pays Operators for Split-Shift Travel Time for the 'running time' of a VTA bus or light rail vehicle, and pays numerous premiums . . . which are not required by federal or state law and that equal or exceed the amounts VTA would potentially pay based on Plaintiffs' claims for additional Split-Shift Travel Time compensation."  *Id.* § 6.3.8.  The *Rai* settlement goes on to state, "[t]hese facts, and this conduct by VTA, satisfies VTA's legal obligations, and establishes that VTA is compliant with the FLSA and all state and local laws with respect to this issue."  *Id.*

Defendant contends that it "relied on this clear judicial finding and acted in accordance with it" and therefore "could not have willfully violated the FLSA."  *See* Defendant's Reply at 12, ECF 103.  Plaintiffs counter that "[f]indings of willfulness have been upheld when a defendant has incurred prior FLSA violations," *see* Plaintiffs' Opp'n at 19 (citing *Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014)), and that the *Estorga* arbitration award "put VTA on notice that it could be subject to FLSA violations," as did the *Rai* settlement, *see* Plaintiffs' Opp'n at 20.  Plaintiffs also argue that "any determination of willfulness would be premature."  *Id.*

The Court is not persuaded by Plaintiffs' arguments.  Although "[q]uestions involving a [defendant's] state of mind . . . are generally factual issues inappropriate for resolution for summary judgment, [] where the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment."  *F.T.C. v.*

29

*Network Services Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010) (internal quotation and citation omitted). Here, the facts are not in dispute. Plaintiffs point to the *Estorga* arbitration award which both sides acknowledge. The *Estorga* arbitration award issued before the *Rai* settlement. *See* Plaintiffs' Opp'n at 20; Defendant's MSJ at 5–6.

The *Estorga* arbitration concerned a split-shift assignment worked by Estorga that included a 90-minute split and 47 minutes of travel time within that split. *See* Grievance 2014-ATU-0039 Opinion & Award ("*Estorga* arbitration") at 5, Ex. C to Flynn Decl., ECF 94-5. The Union argued that because Estorga was "working" during his 47 minutes of travel time, Estorga' break was only 43 minutes, thus entitling Estorga to normal pay for that break under Section 3 of Part B of the CBA. *Id.* at 6. The arbitrator noted that "there is no evidence that any Operator other than [Estorga] ever had a break in a split shift of more than 60 minutes that included travel time sufficient to reduce the remainder of his or her break to less than 60 minutes." *Id.* at 6. The arbitrator ultimately concluded that Estorga's break was only 43 minutes and thus VTA violated Part B, Section 3, 4, and/or 11 of the CBA by not providing Estorga normal pay for a break of 60 minutes or less, *see id.* at 11, based on the arbitrator's interpretation that "the time [Estorga] spend traveling on a VTA shuttle from Gilroy to San Jose was work time under federal law and thus within the meaning of the portion of Part B, Section 4 [of the CBA], regarding the mandates of the FLSA," *id.* at 8.

Thus, the *Estorga* arbitration concerned only the narrow circumstance in which drivers have splits of more than 60 minutes where the split-shift travel time reduced the remainder of the break to less than 60 minutes—a question that is not at issue in the instant action. Moreover, there is no evidence whatsoever that the *Estorga* arbitration considered the effect of other premium payments to offset any overtime liability for split-shift travel time. The *Rai* settlement, which considered such other premiums, concluded that based on those premiums, "this conduct by VTA, satisfies VTA's legal obligations, and establishes that VTA is compliant with the FLSA and all state and local laws with respect to this issue." *See* Settlement Agreement § 6.3.8, Ex. L to Spellberg Decl. As Plaintiffs recognize, the *Estorga* arbitration award issued on August 28, 2015, and the *Rai* settlement was reached on December 16, 2015. *See* Plaintiffs' Opp'n at 4–5. These

undisputed facts demonstrate that VTA sought and received clarification of its legal obligations vis-à-vis the *Rai* settlement agreement shortly after the *Estorga* arbitration award issued.

VTA's behavior is therefore unlike the employer's behavior in *Haro*, the principal case relied on by Plaintiffs. In *Haro*, the employer was found to have willfully violated the FLSA because the employer was on notice of FLSA violations with respect to one group of employees and "thereafter did [not] take any steps to obtain an opinion letter" regarding its FLSA liability to a similar group of employees. 745 F.3d 1249, 1258 (9th Cir. 2014). As the Ninth Circuit noted, "[i]gnoring these red flags and failing to make an effort to examine the positions at issue in this case show willfulness." *Id.* Here, to the contrary, the record demonstrates that VTA took affirmative steps to "examine the positions at issue" with respect to its FLSA legal obligations by completing the *Rai* settlement agreement and obtaining judicial approval. Thus, the Court finds that VTA's actions with respect to its FLSA legal obligations were reasonable, or at the very least, "not reckless," and accordingly "cannot be deemed willful." *McLaughlin*, 486 U.S. at 135, 135 n.13.

### 2. Good faith

Employees are entitled to liquidated damages under the FLSA unless the employer can establish "subjective and objective good faith in its violation of the FLSA." *Local 246 Util. Workers Union of America v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996); 29 U.S.C. § 260. Where the employer fails to carry that burden, liquidated damages are mandatory. *Id.* at 297; *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005). Here, Defendant argues that "[t]he record indisputably demonstrates good faith because [VTA] relied on a stipulated judgment on the merits explicitly finding that [VTA]'s conduct at issue in this case conformed with the FLSA." Defendant's MSJ at 24. In support, Defendant points to the *Rai* settlement agreement. *Id.* For the reasons discussed above with respect to the (lack of) willfulness, the Court agrees that Defendant has demonstrated good faith. Moreover, Plaintiffs failed to respond to Defendant's good faith argument in their Opposition brief—a single mention of "good faith" appears, but in Plaintiffs' willfulness argument. Therefore, Plaintiffs concede that they are not entitled to liquidated damages. *See, e.g.*, *Jenkins v. County of Riverside*, 398 F.3d

1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); *Estate of Alvarado v. Tackett*, 2018 WL 4205392, at *4 (S.D. Cal. Sep. 4, 2018) (finding that failure to address summary judgment issues in opposition brief constitutes a concession as to those issues).

## IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  VTA's motion for summary judgment that Plaintiffs' start-end travel time is not compensable under the FLSA is **GRANTED** and Estorga's motion for summary judgment that the start-end travel time is compensable is **DENIED**.

2.  Estorga's motion for summary judgment that Plaintiffs' split-shift travel time is compensable under the FLSA is **GRANTED** and VTA's motion for summary judgment that the split-shift travel time is not compensable is **DENIED**.

3.  VTA's motion for summary judgment with respect to offsetting start-end/split-shift overtime liability with other premium payments it makes is **GRANTED** to the extent those other payments include elapsed time payments, daily overtime payments, weekly overtime payments based on sick leave, and holiday pay as described in this opinion.

4.  VTA's motion for summary judgment that it has acted in good faith and did not willfully violate the FLSA is **GRANTED**.


**IT IS SO ORDERED.**

Dated:  January 4, 2019

_____
BETH LABSON FREEMAN
United States District Judge