1

2

3          **UNITED STATES DISTRICT COURT**

4         **NORTHERN DISTRICT OF CALIFORNIA**

5              **SAN JOSE DIVISION**

6

7    ROBERT ESTORGA,                           Case No.  16-cv-02668-BLF

8              Plaintiff,

9         v.                                   **ORDER GRANTING MOTION FOR**
                                               **FINAL APPROVAL OF COLLECTIVE**
10   SANTA CLARA VALLEY                        **ACTION SETTLEMENT**
     TRANSPORTATION AUTHORITY,
11                                             [Re:  ECF 135]
              Defendant.
12

13

14        Before the Court is Plaintiffs' unopposed Motion for Approval of Settlement ("Motion").

15   Mot., ECF 135.  In this collective action, Named Plaintiff Robert Estorga alleges that Defendant

16   Santa Clara Valley Transportation Authority ("VTA") violated the Fair Standards Labor Act

17   ("FLSA"), 29 U.S.C. §§ 203, *et. seq.*, by failing to pay him and fellow bus operators overtime for

18   the time spent travelling at the beginning and end of shifts and between shifts. Mot. 2; *see* First

19   Am. Compl. ¶¶ 1–3, 8–11, 14 ("FAC"), ECF 27. The settlement resolves of the claims of Mr.

20   Estorga as well as eleven individuals who opted into the FLSA collective action (collectively,

21   "Opt-In Plaintiffs") (together with Named Plaintiff, "Plaintiffs"). Mot. 3; *see also* Non-Opp'n to

22   Mot. ¶ 3, ECF 136. In their motion, Plaintiffs request that the Court approve the payments to

23   Plaintiffs and attorney's fees and litigation costs. Mot. 3–5. VTA does not oppose the Motion. *See*

24   Non-Opp'n to Mot.

25        Having considered the papers filed by the parties and the relevant legal authority, the Court

26   GRANTS Plaintiffs' Motion.

27

28

## I.   BACKGROUND

### A.  Factual and Procedural Background

On May 17, 2016, Mr. Estorga filed a FLSA collective action against VTA in this Court. *See* Compl., ECF 1. On September 30, 2016, Mr. Estorga filed a First Amended Complaint clarifying his allegations. *See* FAC. VTA is a public entity that provides local bus and rail service in the counties of Santa Clara, San Mateo, and Alameda. *Id.* ¶¶ 3–4. Mr. Estorga was a bus driver at the time of the original complaint and brings this collective action on behalf of himself and all past and current employees of VTA similarly situated. *Id.* ¶ 2. This action alleges that VTA failed to pay its bus operators overtime for two types of travel time, both of which are considered "hours worked" under the FLSA. *Id.* ¶¶ 8–10. One is travel time incurred during "mid-shift" travel, in which Mr. Estorga claims bus drivers were required to travel from one location (i.e., Gilroy) where the first part of the shift ended to another location (i.e., San Jose) where the second part of his shift began. *Id.* ¶ 9. The other is the "start-end" travel time, in which Mr. Estorga claims that bus drivers would begin a shift at the "division" but would end the shift on the street, a geographical location distant from the "division," and vice versa. *Id.* ¶ 10.

This action was conditionally certified as a collective action on June 9, 2017. Order for Conditional Certification, ECF 45. After notice of the action was mailed to potential plaintiffs in July 2017, *see* Order Granting Stipulation, ECF 54, seventeen additional individual plaintiffs opted into the lawsuit. *See* Consent to Join (Various Individuals), ECF 55–71. Six of those plaintiffs later withdrew from the case. *See* Dismiss (Various Individuals) as a Pl., ECF 82–84, 96, 99, 108. Therefore, the current Plaintiffs in this action are Mr. Estorga along with James Butler III, Marissa Diaz, Christopher Edwards, William Gorman, Kecia Kemp, George Lopez, Gabriel Silva, Theresa Smith, Joseluis Solis, Rodney Thomas, and Karla Williams. Non-Opp'n to Mot. ¶ 3. Depositions of ten out of the eleven Opt-In Plaintiffs were conducted in 2018. Mot. 2, *see also* Mot. 3 n.1. Both parties filed cross motions for summary judgment on September 13, 2018. *See* Mot. for Summ. J. (Defendant VTA), ECF 93; Mot. for Summ. J. (Plaintiff Estorga), ECF 94. On January 4, 2019, the Court granted in part and denied in part each party's motion. Order on Mot. for Summ. J., ECF 106. In particular, the Court denied liability for "start-end" travel time and

United States District Court
Northern District of California

1   granted liability for "mid-shift" travel time. *Id.* at 32.

2   Subsequently, the parties engaged in settlement negations. Both parties attended a

3   settlement conference with Magistrate Judge Ryu on April 29, 2019. *See* Min. Entry, ECF 116.

4   The parties independently reached a tentative settlement agreement on July 29, 2020. *See* Joint

5   Notice of Settlement, ECF 133; *see also* Non-Opp'n to Mot. ¶ 9. Mr. Estorga filed the Motion for

6   Approval of Settlement on September 11, 2020. *See* Mot. VTA filed a notice of non-opposition to

7   the Motion on September 25, 2020. *See* Non-Opp'n to Mot. The Opt-In Plaintiffs were made

8   aware of the settlement agreement, and thus far, nine of the eleven Opt-In Plaintiffs have signed

9   Exhibit A of the agreement. Mot. 3; *see also* Ex. B, Signatures, ECF 135-3. Plaintiffs have until

10  December 21, 2020 to provide a signed copy of the agreement, and Mr. Estorga expects one of the

11  two remaining Opt-In Plaintiffs to sign the agreement by then. Mot. 4–5. On December 9, at the

12  request of the Court, Plaintiffs' counsel provided additional details about the attorneys' fees

13  requested in the settlement agreement. *See* Fees Brief, ECF 138.

14   **B.  Settlement Agreement**

15  In the parties' settlement agreement, VTA agrees to a gross settlement amount of $25,000.

16  Ex. 1, Settlement Agreement 2, ECF 135-2. The gross settlement amount will be allocated as

17  follows: each of the Plaintiffs will receive $500.00 and $19,000.00 will go to Plaintiffs' counsel

18  for attorney's fees and costs. *Id.* at 2–3.

19  Plaintiffs receive a total of $500 each from the settlement agreement. *Id.* Plaintiffs still

20  employed by VTA will receive their $500 as wages from VTA, and Plaintiffs who are no longer

21  employed by VTA will receive $500 each as a lump sum from VTA. *Id.* If Plaintiffs' counsel is

22  unable to locate the Plaintiffs who have not yet signed Exhibit A of the settlement agreement by

23  December 31, 2020, the unlocatable Plaintiffs will be dismissed from this action with prejudice

24  and VTA will have no obligation to make the $500 payment to any unlocatable Plaintiff. *Id.* VTA

25  will issue payment no later than 45 days from the effective date of this agreement to every

26  Plaintiff who has signed Exhibit A of the settlement agreement. *Id.* Upon approval of this

27  agreement by the Court, the Plaintiffs agree to dismiss their claims with prejudice. *Id.* at 3.

28  Plaintiffs' counsel, Neyhard Anderson Flynn & Grosboll, will receive $19,000 from this

*United States District Court*
*Northern District of California*

3

settlement. *Id.* at 3; *see also* Fees Brief. VTA will issue payment no later than 45 days from the effective date of the settlement agreement. Settlement Agreement 3.

Under the terms of the Settlement Agreement, Plaintiffs agree to release the following claims and rights against VTA:

> "Released Claims" shall mean any and all claims against the SCVTA under the FLSA as set forth in the Complaint, specifically any and all claims relating to allegations that SCVTA violated the FLSA by failing to treat start-end or split-shift travel as hours worked.

*Id.* at 3–4. Plaintiffs also voluntarily waived the rights described in Section 1542 of the California Civil Code, which gives Plaintiffs the right not to release claims relating to or arising from this action of which they are not yet aware. *Id.* at 4. In exchange for Plaintiffs' release of claims, VTA releases any claim for attorney's fees and costs incurred in this proceeding against any Plaintiff. *Id.* at 5.

## II.    LEGAL STANDARD

"The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)). Employees cannot waive their rights under the FLSA since doing so would "nullify the purposes" of the statute. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Accordingly, either the Secretary of Labor or a district court must approve the settlement of an FLSA claim. *See Slezak v. City of Palo Alto*, No. 16-CV-3224-LHK, 2017 WL 2688224, at *1–*2 (N.D. Cal. June 22, 2017); *Gonzalez v. Fallanghina, LLC*, No. 16-CV-1832- MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017).

The Ninth Circuit has not specifically addressed the criteria courts should use to determine whether to approve an FLSA settlement. However, district courts in the Ninth Circuit have followed the standard set forth in the Eleventh Circuit's *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *Slezak*, 2017 WL 2688224, at *2; *Gonzalez*, 2017 WL 1374582 at *2. Under *Lynn Food Stores*, before approving an FLSA settlement, the court must

scrutinize the settlement agreement to determine if it is "a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355. If the settlement reflects a reasonable compromise over issues that are in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

## III.   DISCUSSION

In their unopposed motion, the Plaintiffs ask the Court to approve the terms of the FLSA settlement, including the recovery for each Plaintiff and attorneys' fees and costs. Mot. 3–5.

### A.   Approval of the Collective Settlement

Before approving an FLSA settlement here, the Court must find that (1) the case involves a bona fide dispute; (2) the proposed settlement agreement is fair and reasonable; and (3) the award of costs is reasonable. *Lynn's Food Stores*, 679 F.2d at 1354. The Court addresses each issue in turn.

#### i.   Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez*, 2017 WL 1374582, at *2). That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims. *See Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)). If there were no doubt as to the employer's liability, the FLSA settlement would allow an employer to avoid paying out the full cost of complying with the FLSA. *See id.* at 1173.

Here, the Court finds that there is a bona fide dispute. As is apparent by the docket history, the parties have rigorously debated whether VTA owed its bus operators overtime for "mid-shift" and "start-end" travel time under the FLSA. Even though this Court has granted summary judgment as to the "start-end" travel time, Plaintiffs maintain a bona fide dispute still exists in this case as that parties would present dueling evidence as to the amount of unpaid compensable

United States District Court
Northern District of California

5

overtime owed for the "mid-shift" travel time if this case proceeds to trial. Mot. 3; *see also* Order on Mot. for Summ. J. 32. VTA agrees that the resolution of how much "mid-shift" overtime pay is required by the FLSA is a bona fide dispute. *See* Non-Opp'n to Mot. ¶ 19. In the settlement agreement, the parties emphasize that there exists legitimate questions "over the existence and extent of [VTA's] liability." Settlement Agreement 2.

Because the parties dispute these aspects of the case, the Court finds a bona fide dispute exists under the FLSA. Most importantly, the Court acknowledges that the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

### ii.    Fair and Reasonable Resolution

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances." *Selk*, 159 F. Supp. 3d at 1173.  In making this determination, courts consider the following factors: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the Parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See, e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4. The Court will now address each of these factors accordingly.

### a.    Plaintiffs' Range of Possible Recovery

Regarding the Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See, e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F. Supp. 3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-

United States District Court
Northern District of California

1   128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

2          Each Plaintiff's recovery under the settlement agreement is $500. Mot. 4. Plaintiffs argue

3   that $500 each is proper because Plaintiffs anticipate they will be entitled to less than $500 in

4   unpaid overtime pay at trial pursuant to the Court's ruling that denied liability for "start-end"

5   travel time and only granted liability for "mid-shift" travel time. *Id.*; *see also* Order on Mot. for

6   Summ. J. 32. Plaintiffs also believe that some Plaintiffs likely will not be eligible for any damages

7   at trial. Mot. 4. Therefore, Plaintiffs maintain that the "amount received by each Plaintiff [in this

8   settlement] exceeds the amount that Plaintiffs' anticipate would be recovered at trial." *Id.* VTA

9   agrees with Plaintiffs "that the $500 per Plaintiff award is greater than or equal to any back-pay

10  damages owed to each Plaintiff" in light of the Court's ruling on the cross motions for summary

11  judgment and "that the settlement amounts, as well as the method of calculating the amounts, are

12  fair and consistent with and within the range of the maximum results Plaintiffs could expect to

13  obtain at trial." Non-Opp'n to Mot. ¶¶ 16–17.

14         In addition, Plaintiffs maintain that "VTA agrees to abide by the Court's ruling"  and

15  "comply[] with the requirement that mid shift travel time be appropriately compensated," thereby

16  providing "a benefit for the remainder of each Plaintiff's employment with Defendant." Mot. 4.

17  VTA has not opposed this argument. *See* Non-Opp'n to Mot.

18         Given the agreement among the parties of the high recovery and benefit for the Plaintiffs,

19  this factor weighs in favor of approval.

20                  **b.   The Stage of the Proceedings and Amount of Discovery Completed**

21         The Court next assesses "the stage of proceedings and the amount of discovery completed

22  to ensure the Parties have an adequate appreciation of the merits of the case before reaching a

23  settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak*, 2017 WL 2688224, at *4). If the

24  parties have "sufficient information to make an informed decision about [the] settlement, this

25  factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

26  1239 (9th Cir. 1998)).

27         This case is several years old, and in that time the parties have engaged in extensive

28  discovery, including depositions, written discovery, and expert reports. *See* Mot. 4; Non-Opp'n to

United States District Court
Northern District of California

7

Mot. ¶ 4. Indeed, both parties had filed cross motions for summary judgment two years before

reaching a settlement. *See* Mot. for Summ. J. (Defendant VTA); Mot. for Summ. J. (Plaintiff

Estorga). Before that, the parties had engaged in extensive discovery and briefing related to the

motions to certify the collective. Moreover, the parties participated in a settlement discussion with

Judge Ryu in 2019. *See* Min. Entry. Given the current stage of the case, the parties have a good

understanding of the merits of their respective positions. *See* Order on Mot. for Summ. J.

Accordingly, this factor weighs in favor of approving the settlement.

### c.   The Seriousness of the Litigation Risks Faced by the Parties

Courts will approve an FLSA settlement when there is a significant risk that litigation

could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL

4773057, at *5. Plaintiffs face significant risks if they were to proceed with this litigation. The

Court has already limited this case to "mid-shift" liability only. *See* Order on Mot. for Summ. J.

Plaintiffs also believe that most Plaintiffs are entitled to less than $500 in unpaid overtime for

"mid-shift" travel time, and that some Plaintiffs likely will not be eligible for any damages at trial,

which increases their risk if they do proceed with this action. Mot. 4. VTA also agrees that the

settlement amounts are "within the range of the maximum results Plaintiffs could expect to obtain

at trial." Non-Opp'n to Mot. ¶ 17.

Because further litigation could easily result in Plaintiffs recovering less than the

settlement amount or perhaps nothing at all, this factor weighs in favor of approving the

settlement.

### d.   The Scope of Any Release Provision in the Settlement Agreement

Courts in this Circuit have rejected blanket releases of all potential claims against the

employer for all unlawful acts whatsoever. *See, e.g.*, *McKeen-Chaplin v. Franklin Am. Mortg. Co.*,

No. 10-CV-5243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (ruling that the

plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general

release provision of all claims related to their employment in an FLSA settlement); *Ambrosino v.

Home Depot. U.S.A., Inc.*, No. 11-CV-1319-MDD, 2014 WL 1671489, at *2–*3 (S.D. Cal. Apr.

28, 2014) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had no relationship to wage and hour issues). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F. Supp. 3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

Here, consistent with Ninth Circuit precedent, the release provision is limited to releasing FLSA claims arising from the instant action (i.e., claims related to "start-end" or "mid-shift" travel time). *See* Settlement Agreement 3–4. Voluntarily waiving rights under Section 1542 of the California Civil Code is a common and accepted practice in this District. *See del Toro Lopez v. Uber Techs., Inc.*, No. 17-CV-06255-YGR, 2018 WL 5982506, at *1, *25 (N.D. Cal. Nov. 14, 2018) (granting final approval of a FLSA class action settlement, which included released claims and rights under California Civil Code Section 1542); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *3, *10 (N.D. Cal. Aug. 25, 2017) (same). As such, the release is not a blanket release of all potential claims, but is instead tailored to the FLSA overtime action here. Accordingly, this factor weighs in favor of approval of the settlement.

### e.   The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 WL 2688224, at *5 (citation omitted). Here, the Plaintiffs' counsel believe that "the settlement terms are fair and reasonable." Mot. 4. VTA agrees. Non-Opp'n to Mot. ¶¶ 17–19. Plaintiffs' counsel is experienced in labor and employment law and has represented numerous plaintiffs in union and employment disputes. This settlement agreement was reached as the result of arms-length negotiations and with the aid of Magistrate Judge Ryu in 2019. Moreover, after notice and discussion with counsel, only two Opt-In Plaintiffs have thus far not joined the settlement, and Plaintiffs' counsel expects one of the remaining Plaintiffs to join the

9

settlement before the December 31st deadline.[1] *See* Mot. 3 n.1, 3–4; Signatures. Thus, eighty-three percent of the class has currently chosen to participate in the settlement, and this percentage is expected to increase, indicating widespread approval of the settlement agreement by Plaintiffs. Accordingly, this factor weighs in favor of approval of the settlement.

### f.  The Possibility of Fraud or Collusion

When courts in the Ninth Circuit examine the terms of FLSA settlements, courts will often find fraud or collusion if the following conditions are present:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Jennings*, 2018 WL 4773057, at *8 (alterations omitted) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

Plaintiffs' counsel does not explain how the settlement amount was calculated. *Cf. Wagner v. Cty. of Inyo*, No. 117CV00969DADJLT, 2018 WL 5099761, at *5 (E.D. Cal. Oct. 18, 2018) ("[T]he court finds that there is a low probability of fraud or collusion because the parties used payroll record data to calculate back overtime pay and liquidated damages[.]"). However, the parties reached this settlement through arm's-length negotiations and with the aid of Magistrate Judge Ryu in 2019, indicating a lack of fraud or collusion. *See Saleh*, 2018 WL 6002320, at *5 ("The likelihood of fraud or collusion is low here because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). The parties also engaged in lengthy litigation, including extensive discovery, before reaching the proposed resolution, which reduces the possibility of fraud or collusion in this settlement agreement. *See Talavera v. Sun-Maid Growers of California*, No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115, at *9 (E.D. Cal. May 6, 2020) ("[T]here is no indication that this settlement was the product of fraud or collusion [as] the parties engaged in lengthy litigation including extensive discovery before reaching this proposed

---

[1] One opt-in cannot be reached.

1     resolution."). Most significantly, despite the existence of a clear sailing agreement, the weighing of

2     the *In re Bluetooth* factors favors approval of the settlement.

3            First, Plaintiffs' counsel is receiving a high amount of the total settlement: $19,000 out of

4     the total $25,000. *See* Mot. 4; Settlement Agreement 3. This high number does not, in itself, indicate

5     collusion. Attorneys' fees in FLSA collection actions are usually high, *see Flores v. TFI Int'l Inc.*,

6     No. 12-CV-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal. Apr. 17, 2019) (internal citation

7     omitted) ("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee

8     requests will exceed the amount of the judgment in the case."), and this Court has already limited

9     liability for VTA during summary judgment. *See* Order on Mot. for Summ. J. Courts in this Circuit

10    have found similar percentages of requested attorneys' fees not to be indicative of collusion. *See*

11    *Talavera*, 2020 WL 2195115, at *9 ("[P]laintiffs' counsel have requested an award of up to $46,000

12    for attorneys' fees and costs which would be a high percentage of the total settlement amount of

13    $58,000 [but] there is no indication that this settlement was the product of fraud or collusion."). The

14    fact that the requested fees do not reduce the amount of relief for each Plaintiff further indicates a

15    lack of collusion. *See id.* (internal citation omitted). Therefore, the requested attorneys' fees do not

16    weigh against approving the settlement.

17           Secondly, there is a clear sailing provision in this settlement agreement. The settlement

18    agreement explicitly states that VTA releases any claim for attorneys' fees and costs incurred in this

19    proceeding against any Plaintiff in exchange for Plaintiffs' release of claims. Settlement Agreement

20    5. Clear sailing provisions do not inherently indicate fraud or collusion. *See De Leon v. Ricoh USA,*

21    *Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *13 (N.D. Cal. March 31, 2020) (finding no

22    possibility of fraud or collusion despite a clear sailing provision in the settlement agreement); *see*

23    *also Talavera*, 2020 WL 2195115, at *9–*10 (same). However, courts in this District have

24    concluded that the existence of a clear sailing provision alone does not indicate collusion is present

25    in the settlement, particularly where attorneys' fees are reasonable. *See De Leon*, 2020 WL 1531331,

26    at *12 ("The Court concludes that the existence of the clear sailing provision on its own does not

27    evince collusion, because the fees awarded are not "unreasonably high," but instead fa[l]l within the

28    25% benchmark established by the Ninth Circuit."); *see also Bellinghausen v. Tractor Supply Co.*,

United States District Court
Northern District of California

11

306 F.R.D. 245, 258–59 (N.D. Cal. 2015) (finding no collusion under *In re Bluetooth* despite a clear sailing agreement due to a finding of reasonable attorneys' fees, the absence of objections to the settlement, and an arm's-length negotiation process overseen by a mediator). As stated prior and discussed in detail below, the requested fees do not indicate fraud and are not unreasonable. Therefore, the clear sailing provision does not weigh against approving the settlement.

This settlement agreement also does not include any reversion of funds. *See generally* Settlement Agreement. Therefore, the weighing of the three *In re Bluetooth* factors favors approval of the settlement.

* * *

After considering the totality of the circumstances, the Court finds that the proposed settlement is a fair and reasonable resolution of a bona fide dispute.

## B.   Attorney's Fees and Litigation Costs

Reasonable attorney's fees and litigation costs may also be awarded as part of an FLSA settlement. *See Selk*, 159 F. Supp. 3d at 1180–81; *see also* 29 U.S.C. § 216(b). Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine whether the attorney's fees are reasonable. *See In re Bluetooth*, 654 F.3d at 942. However, where the recovery is separate from a common fund, the lodestar method is usually employed. *Id.* Under the lodestar method, courts multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

Because the VTA will pay attorneys' fees separately from, and in addition to, the proposed settlement benefits to collective members, the lodestar method is most appropriate in this action. *See K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *6 (N.D. Cal. July 26, 2018). Plaintiffs' counsel states that the $19,000 they are expected to receive from the settlement covers both fees and costs expended in the course of the litigation. Mot. 4. Plaintiffs' counsel also states that it has billed at least 783.2 hours in the litigation of this case and has incurred significant costs, including deposition costs. *Id.*; Fees Brief 2-3. Plaintiffs' counsel maintains that the amount of fees and costs is thus modest in comparison to the time incurred in

1    litigation. Mot. 4. VTA has not disputed these statements and agree that the amount to be paid to

2    Plaintiffs' counsel is fair and reasonable. Non-Opp'n to Mot. ¶¶ 15–16, 18.

3        The lodestar dwarfs the attorneys' fees sought in the settlement proposal. Here, the lodestar

4    is $355,930. Fees Brief 3. Plaintiffs' counsel provides an affidavit and billing records to support this

5    calculation. *See* ECF 138-1, 138-2. Neyhart, Anderson, Flynn & Grosboll expended at least 783.2

6    hours on this case. Fees Brief 3. William Flynn, a shareholder with forty years of legal experience,

7    expended 500.6 hours at a rate of $500/hour; Benjamin Lunch, a shareholder with fourteen years of

8    legal experience, expended 233.2 hours at rate of $400/hour; Tanisha Arata, an associate with nine

9    years of legal experience, expended 45.1 hours at rate of $250/hour; and Wan Yan Ling, an associate

10   with six years of legal experience, expended 4.3 hours at a rate of $250/hour. *Id.* The Court finds

11   these hours and rates reasonable. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n* (N.D. Cal. 2017)

12   2017 WL 2902867, *2 ($600 per hour for attorneys with twenty years of experience; $425 per hour

13   and $350 per hour for attorneys with seven to thirteen years of experience); *Slezak v. City of Palo*

14   *Alto* (N.D. Cal. 2017) 2017 WL 2688224, *6-7 ($600 per hour for partner and $400 per hour for

15   senior associate). Counsel also notes that the firm is not seeking attorneys' costs to cover $17,426.37

16   in out-of-pocket expenses.

17       It is important to note that Plaintiffs' counsel requests fees and costs in the amount of

18   $19,000. Mot. 4. This is seventy-six percent of the total settlement fund. Although this percentage

19   may be  cause for concern in certain types of actions, that is not the case in a standalone FLSA

20   collective action. *See Talavera*, 2020 WL 2195115, at *10 (finding no concern with a seventy-nine

21   percent allocation of attorneys' fees and costs in a standalone FLSA collective action). This is

22   because "the fee-shifting provisions of the FLSA are intended to allow plaintiffs to find competent

23   counsel if legal action is required to compel the employer to pay what is owed, because if the

24   plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless

25   of the size of the claims . . . ." *Id.* (citation omitted). In addition, this percentage does not concern

26   the Court because the requested fees do not reduce the payments to the Plaintiffs. *See id.* (citing

27   *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2019 WL 3099661, at *6 (C.D. Cal.

28   Mar. 22, 2019) (granting approval of a FLSA collective action including attorneys' fees and costs

United States District Court
Northern District of California

13

making up over sixty-six percent of the total settlement amount, observing that "[w]hile the amount requested is a large portion of the settlement fund, counsel's fees would not reduce the payments to the Collective members")). Finally, Plaintiffs' counsel applied a dramatic negative multiplier to the lodestar. The Court finds this reasonable when compared to the total settlement amount and the result achieved.

## IV.    ORDER

For the foregoing reasons, Plaintiffs' Motion for Approval of Settlement is GRANTED. Plaintiffs SHALL file a notice of dismissal or a status update **no later than January 25, 2021**.

**IT IS SO ORDERED.**

Dated: December 11, 2020

BETH LABSON FREEMAN
United States District Judge